IN THE MATTER OF THE PETITION OF NATHANIEL FORD, to vacate an assessment for the repaving of Union street, etc., in the city of Brooklyn.

(SPECIAL TERM, KINGS COUNTY, 1872.)

By the Brooklyn city charter (Laws 1854, chap. 384, tit. 4, § 24, etc.), the assessors for street assessments, after hearing parties interested, are to make a report, with the objections presented to them, which the common council are to refer to a committee, who, after a hearing pursuant to notice published, are to report to the common council,—*Held,* that the omission of the committee to publish notice of hearing was fatal to the assessment.

*Held* also, that the act of 1871 (chap. 483), limiting the authority of the court, in case of irregularity, to a reduction of assessments to the extent of its increase by the irregularity, though retroactive, was inapplicable.

A local assessment for street improvements is not a tax, within the meaning of article 7, section 13, Constitution, which requires every law imposing a tax to state the tax and its object, &c.

The statutory requirement in the charter of Brooklyn (§ 5, etc., tit. 4), that a district of assessment shall be laid out preliminarily, is a restriction merely on the power of the common council in respect to work ordered by them.

Commissioners having an option as to the kind of pavement to be used for streets, but required to give the work after advertising for proposals to the lowest bidder, may determine the particular kind to be laid down by inviting proposals for different kinds, and thereupon awarding to the lowest bidder for the kind selected.

The resignation of commissioners appointed by the statute of 1868 (chap. 460), authorizing repavement, etc., of a street in Brooklyn,

and their employment on and compensation for part of the work authorized, will not, in the absence of proof of fraud or injury to the public interests, vitiate the assessment, but the sums embraced in their assessment for their compensation is to be deducted from the assessment under the law of 1871 (chap. 483).

THE facts are stated in the opinion.

*Evarts, Southmayd & Choate*, for the petitioner.

*William C. De Witt*, opposed.

GILBERT, J.   The statute by virtue of which Union street was repaved and the assessment therefor sought to be vacated was made (Laws of 1868, chap. 460), provides that the expense of the improvement "shall be levied and collected in the same manner as now provided by law with reference to grading and paving streets in Brooklyn." The provisions of law thus adopted are contained in the charter of the city. By section 33 of title 4 of the charter, provision is made for an assessment by the board of assessors of the expense of the grading and paving streets upon the several lots, pieces or parcels of land benefited, in proportion to the benefit which, in their opinion, the same shall derive from, or in justice ought to be assessed for the said improvement. By section 24 of the same title the board of assessors are required to make a report in writing of the assessment so made, and, before signing the same, to give ten days' notice, in the corporation newspapers, of the time and place where the parties interested can be heard. After hearing the parties, the said board is required to complete and sign the report, and to return it, with the written objections of the parties interested, to the common council. The common council are required to refer and report the objections to a committee of the board; and said committee is required to "publish a notice in the corporation newspapers for ten days successively to the parties interested, of the time and place when and where they will meet to hear them on the objections and report." The committee are required to examine the matter and report to

the common council its views and opinions respecting the assessment. Thereupon the common council are required to examine the matter, and either correct the assessment, send it back to the board of assessors or confirm it, and their confirmation of the assessment is made final and conclusive. Objections were made by the petitioner and other parties interested, and left with the board of assessors, and were returned with their report. The common council referred them to a committee, but this committee gave no notice to the parties interested, affording them an opportunity to be heard, and the assessment was confirmed without any hearing of the persons assessed or any of them by said committee or by the common council.

I am of opinion that the omission to give this notice was a fatal irregularity. The principle is very familiar, that when a special authority is delegated by statute to particular persons or public bodies affecting the property of individuals against their will, the course and mode of proceeding prescribed by law must be rigorously pursued, and every substantial requirement of the statute giving the power must be strictly fulfilled. (*Sharp* v. *Spier*, 4 Hill, 76.) The duty imposed on the board of assessors and on the common council is a judicial one in its nature. It is a fundamental rule that in all judicial or *quasi* judicial proceedings whereby the citizen may be deprived of his property, he shall have notice and an opportunity of a hearing before the proceedings can become effectual. The statute under consideration secures and enforces this rule, and it cannot be doubted that the notice which was omitted was the essence of the proceeding, and essential to the validity of the assessment. The act of April 13, 1871 (chap. 483), amendatory of the statute authorizing this kind of proceeding to vacate an assessment, provides that the court shall only have authority to reduce the assessment as much as it has been increased by the irregularity. Here, however, the irregularity goes to the whole assessment. The error is not one in amount merely, but is one which vitiates the entire assessment.

In the Matter of the Petition of Nathaniel Ford.

While I am of opinion that this amendatory statute is retroactive in its operation, and applies to all proceedings instituted after it took effect, yet the provision cited cannot be applied to an irregularity like this for the reason that the proceeding has not increased an otherwise valid assessment, but has imposed an assessment that is wholly invalid.

It follows from the views expressed that the present assessment must be set aside, and that a new assessment is necessary to enable the city authorities to collect the amount which has been advanced by the city to defray the expense of the improvement.

Several objections have been urged against the power to impose any assessment for the expense of the improvement in question. As these objections have been fully argued on both sides, and as they involve the validity of a new assessment, it is proper to determine the questions raised by them. First, it is urged that the authority to make the assessment having been conferred only by a section of the statute which refers to another statute, it is not valid because section 13 of article 7 of the Constitution provides that " every law which imposes, continues or revives a tax, shall distinctly state the tax and the object to which it shall be applied, and it shall not be sufficient to refer to any other law to fix such tax or object." The answer to this is that this is not a tax in the sense in which that word is used in the section of the Constitution cited, but is a local assessment.

A tax and a local assessment are not in legal contemplation the same thing, although both emanate from the same source, namely, the sovereign power of taxation. The distinction has been frequently recognized in the interpretation of statutes. The principle which governs courts in the interpretation of Constitutions and legislative acts is the same. The cardinal object in each case is to ascertain the intention of the authors of the instrument. When the language is plain and unambiguous, it needs no interpretation. But when words are used which have both a technical and a popular signification, it often becomes necessary to determine which significa-

tion was intended. Thus, *In the Matter of the Mayor, etc., of New York for improving Nassau street* (11 J. R., 77), several churches were included within a street assessment, and they claimed to be exempt from its operation by the 28th section of the act of 1813 for the assessment of taxes. This section enacted that "no real estate belonging to any church shall be taxed by any law of this State." The court held that all the provisions of the act, including the exemption, referred to public and general taxes to be assessed and collected for the benefit of the town, county or State at large. They say the word "taxes" means burdens, charges or impositions put or set upon persons or property for public uses, and this is the definition which Lord Coke gives to the word talliage (2 Just., 532), and Lord Holt in Carth., 438, gives the same definition, in substance, of the word "tax." The legislature intended by that exemption to relieve religious and literary institutions from these public burdens. But to pay for the opening of a street in a ratio to the benefit or advantage derived from it is no burden.

Again, in *Sharp* v. *Speir*, before cited, the construction of the seventh section of the village charter of Brooklyn was under consideration. This section provided that "whenever any tax of any description on lands, &c., in the same village shall remain unpaid," then, after having taken certain proceedings which the section provided, power was given to cause such lands to be sold. The court, Bronson, J., delivering the opinion, observe that "the first remark upon this section is, that it only authorizes the sale of lands for the payment of a tax, and, although it extends to a tax of any description," still it includes nothing but a tax of some kind. Our laws have made a plain distinction between taxes which are burdens or charges imposed upon persons or property to raise money for public purposes, and assessments for city and village improvements, which are not regarded as burdens, but as an equivalent or compensation for the enhanced value which the property of the persons assessed has derived from the improvement. Many other cases to the same effect might

be cited, but these are sufficient to illustrate the distinction to which I have adverted. The Constitution itself contains a plain recognition of the same distinction, for, by section nine, of article eight, the legislature is required to restrict the power of taxation, assessment, &c., of municipal corporations, so as to prevent abuses in assessments. I am not aware of any binding adjudication directly upon this question. The case of *Hanlon* v. *Supervisors, &c.* (57 Barb., 383), shows that this point was not considered by my brother TAPPEN. Moreover, that was a decision at Special Term, and it is in conflict with a decision of this court at General Term in the case of *People ex. rel., The Nicolson Pavement Co.* v. *Mayor* is not reported. The question has been before the Court of Appeals twice, but on each occasion the case was decided upon other grounds. The opinion of the court on this subject, however, was expressed, and such expressions deserve the utmost consideration. In the case of the *People* v. *The Supervisors of Chenango* (4 Seld., 317), the court, in discussing the question before me, use this language: "By the rule for construing statutes and acts of public bodies, the taxes spoken of in the fourth section of the seventh article, which the legislature are prohibited from imposing, continuing or reviving, unless three-fifths of all the members elected to either house are present when the final vote is taken, means such tax as is elsewhere spoken of in the same article, viz., a tax general in its operation and coextensive with the State." In *Darlington* v. *The Mayor* (31 N. Y. R., 186), the court, DENIO, C. J., delivering the opinion, held that "article seven of the Constitution relates to the State finances, and, taken together, it constitutes the financial system of the State, so far as concerns constitutional restraints. The affairs of cities and counties, so far as they are regulated by the Constitution, are treated of in other provisions." But the point was directly adjudicated in the case of *City of Peoria* v. *Kidder* (26 Ill., 357). The Constitution of Illinois (art. 9, § 2) provides that "the general assembly shall provide for levying tax by valuation, so that every person or corporation shall

pay a tax in proportion to the value of his or her property; such value to be ascertained by some person or persons to be elected or appointed in such manner as the general assembly shall direct, and not otherwise." The charter of the city of Peoria provided that, when a public street was opened or improved, commissioners should be appointed by the County Court, to assess upon the property benefited the expense of the improvement in proportion to the benefit. These provisions were held to be constitutional, on the ground that assessments of this character were not such taxation as was contemplated by the general terms which the Constitution employed. (See, also, Cooley's Const. Lim., 498, 499, and cases cited.) I am of opinion, therefore, that this objection is not well founded.

The question involved in the second objection, presented by the petitioner, was decided by this court at General Term, in the case of *The People ex rel. The Nicolson Pavement Company* v. *The Mayor*, before referred to. It was held in that case that the statutory requirement, that a district of assessment should be laid out preliminarily, was a restriction merely on the power of the common council in respect to work ordered by them. This decision covers the principle involved in this objection, and must be deemed *res adjudicata*.

I am unable to perceive any valid objection to the action of the commissioners in advertising for proposals for different kinds of pavement before determining the particular kind to be laid down. The statute does not, in terms or by implication, require such previous determination; and it is quite probable that the relative cost of the different kinds of pavement for which bids were asked, formed a material element of the determination which they actually made. It was certainly proper for the commissioners to consider the cost before exercising the option given them by the statute; and I know of no way by which they could have ascertained such cost as certainly as by inviting proposals. The contract was in fact

given to the lowest bidder for the kind of pavement adopted.
The case of *The Assessment against William T. Blodgett*, in
the Court of Appeals, is not applicable, for the reason that, in
that case, there was a violation of a positive statutory require-
ment.

With respect to th  fourth objection, it appears that two
of the commissioners, named in the statute to make the
improvement in question, resigned, and that they were after-
ward employed, and received compensation for doing a part
of the work authorized by the statute, and that this resigna-
tion was made and accepted for the purpose of enabling
them to engage in the subsequent employment.   No actual
fraud or injury to the public interests in any form is shown.
It is contended by the petitioner that these facts vitiate the
entire assessment.   I cannot concur in this view.   The practice
is certainly very reprehensible, and if sanctioned might lead to
great abuses; still, to set aside the whole assessment on this
ground would have the effect to relieve the parties immedi-
ately interested from a large liability which the acts com-
plained of have had no effect in producing, and to cast the
burden to that extent upon others who ought not to be
charged with it.   This would accomplish greater injustice
than if the irregularity alleged were left to go unredressed.
A more just and equitable course would be to deduct from
the assessment all sums embraced in it for compensation to
the commissioners who resigned.   And I think the court has
no power, since the act of April 13th, 1871, to grant a greater
measure of relief than this.   This act is retroactive, so far as
to authorize and require the reduction of assessments, whether
old or new, in cases instituted after the act became operative.
This was held expressly by the General Term in the first
department, *In the matter of the Petition of Michael Tracey*
(59 Barb., 525), and is in accordance with general principles,
especially in cases where violations of trusts or duties affect
not only the *cestuis que trust*, but innocent third persons.

If I am correct in the construction given to the act of
April 13th, 1871, then all the remaining objections can be

obviated by striking from the assessment such items, if any, as are not authorized by law. It would serve no useful purpose to determine the questions arising upon these latter objections at this time. For this reason I have not given them such consideration as would justify me in deciding them.

The prayer of the petitioner is granted with costs.