The Roosevelt Hospital, Appellant, *v.* The Mayor, Aldermen and Commonalty of the City of New York, Respondent.

Where a provision in an act incorporating a charitable institution in the city of New York exempted its real estate from taxation, *held*, that such real estate was not thereby exempted from an assessment for a local improvement; that the assessment was not taxation within the meaning of the act.

*In re Van Antwerp* (56 N. Y. 261), *Harvard College* v. *Aldermen* (104 Mass. 470), distinguished.

In an action to vacate such an assessment, imposed in 1873, it appeared that the land had been assessed for the purposes of taxation in 1866, at which time it belonged to plaintiff. *Held*, that this was a sufficient basis for an assessment within the provision of the act of 1840 (§ 7, chap. 326, Laws of 1840), prohibiting an assessment for a local improvement exceeding half the value of the property as valued by the general tax assessing officers.

The assessment was for the construction of a sewer. It appeared that a general plan of sewerage for the district had been adopted and a map had been filed as prescribed by the act of 1865 (§ 2, chap. 381, Laws of 1865), upon which map the sewer in question did not appear. *Held* (Rapallo and Earl, JJ., dissenting), that this alone did not vitiate the assessment; that when the needs of a district or any part of it, after a plan had been so adopted, required another sewer, the construction of it was authorized by the provision of said act (§ 4) permitting " such subsequent modifications as may become necessary in consequence of alterations made in the grade of any street or avenue, or part thereof, in said district, *or otherwise ;*" that to invalidate the assessment it must be shown, either that the sewer does not accord in its characteristics with the general plan, or that there has been no general plan devised, mapped and filed.

(Argued November 17, 1880 ; decided February 11, 1881.)

Appeal from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made October 7, 1879, affirming a judgment entered upon a decision of the court on trial at Special Term. (Mem. of decision below, 18 Hun, 582.)

The nature of the action and the facts are set forth sufficiently in the opinion of Earl, J.

*Lewis L. Delafield* for appellant.   The property of the Roosevelt Hospital is exempt from the payment of this assessment by the special act creating it.  (Laws of 1864, p. 3, § 3, fol. 47 ; *Harvard College* v. *Aldermen*, 104 Mass. 470 ; *Matter of Van Antwerp*, 56 N. Y. 261.)  In its usual and common acceptation, both in the law and in common parlance, the word "tax" includes an assessment.   (Bouvier, tit. "Taxes" ; Webster, tit. "Tax" ; Worcester, tit. "Tax" ; 1 R. S. 908–909 ; *Matter of Van Antwerp*, 56 N. Y. 261, 265 ; *Stryker* v. *Kelly*, 7 Hill, 23, 24 ; *People* v. *Mayor*, 4 Comst. 425 ; *McComb* v. *Bell*, 2 Minn. 295 ; *Schenly* v. *Alleghany*, 25 Penn. St. 128 ; *Harvard College* v. *Aldermen*, 104 Mass. 470, 483 ; *People* v. *Utica Ins. Co.*, 15 Johns. 380 ; 8 London Jurist, 795 ; *Furman* v. *Mayor, etc.*, 5 Sandf. 16 ; *Bleeker* v. *Ballou*, 3 Wend. 264.)  As the word "tax" always includes an assessment, unless the object of the law shows an opposite intention, the courts have ascertained this difference by the context and by considering the intention of the legislature.   (*Matter of the Mayor, etc., of N. Y.*, 11 Johns. 77.)  In determining what the word "taxation" means in this act of 1864, it is necessary to consider the circumstances which induced the legislature to pass the law.  (*Burrill* v. *Boardman*, 43 N. Y. 257, 262 ; Laws 1864, p. 3, §§ 1, 2, fols. 44, 46 ; 1 R. S. 906, § 5 [5th ed.].)  Unless limited in terms, or by the effect of collocation, recitals or coördinate provisions, an exemption from taxes by statute must imply freedom from the imposition of taxes, not only in the forms and modes already established and in use at the time, but in all forms and modes in which the legislature may from time to time see fit to exercise the power or authorize it to be exercised over property within its jurisdiction.  (*Harvard College* v. *Aldermen*, 104 Mass. 470 ; *Matter of the Mayor, etc., of N. Y.*, 11 Johns. 77; *People* v. *Purdy*, 2 Hill, 39 ; *Lefevre* v. *Lefevre*, 59 N. Y. 448–9 ; *Buffalo Cemetery* v. *City of Buffalo*, 46 id. 506 ; *People* v. *Mayor of Brooklyn*, 4 N. Y. 419, 433, 434.)  The assessment must be vacated, unless the defendants can show a lawful valuation for the purposes of taxation by the commissioner of taxes, because the statute for-

bids any assessment to exceed one-half of the assessed value of the property, and if there has been no assessed valuation there can be no measure by which to determine the moiety allowed. (*Matter of the Second Avenue M. E. Church*, 66 N. Y. 395; Laws 1840, chap. 326, § 7; Valentine's Laws, p. 1278, §§ 7, 8; *Matter of Schell*, 76 N. Y. 433; *Harlem Presbyterian Church* v. *The Mayor*, 5 Hun, 444; *Matter of Second Ave. M. E. Church*, 66 N. Y. 399.) The sewer not being laid down on the plan devised by the Croton Aqueduct board, the assessment therefor is void. (*Matter of Protestant Episcopal School*, 46 N. Y. 178; *Matter of Blodgett*, MS. 1870; Laws 1865, chap. 381, p. 717, § 8.)

*D. J. Dean* for respondent. Exemption from taxation does not imply exemption from assessment for local improvement. (*Matter of the Mayor, etc.*, 11 Johns. 80; 1 R. S. 388; *Bleeker* v. *Ballou*, 3 Wend. 263; *Sharp* v. *Speir*, 4 Hill, 83; Cooley on Taxation, 1876, p. 147, note; *Buffalo Cemetery* v. *City of Buffalo*, 46 N. Y. 566; *Matter of College St.*, 8 R. I. 474; *Crowlep* v. *Copley*, 2 La. Ann. 329; *Northern Liberties* v. *St. John's Church*, 13 Penn. St. 104; *Lefevre* v. *Detroit*, 2 Mich. 586; *Second Universalist Soc.* v. *Providence*, 6 R. I. 235; *Beals* v. *Providence Rubber Co.*, 11 id. 383; *Ottawa* v. *Free Church*, 20 Ill. 423; *Sheehan* v. *Good Samaritan Hospital*, 5 Mo. 155; *Lockwood* v. *St. Louis*, 24 id. 20; *Baltimore* v. *Cemetery Co.*, 7 Md. 517; *Patterson* v. *Society, etc.*, 27 N. J. 185; *Bridgeport* v. *N. Y. & N. H. R. R. Co.*, 36 Conn. 255; *Guardian of Bedford Union* v. *Bedford*, 7 Exch. 777; *State* v. *Newark*, 27 N. J. 185; Cooley on Taxation, 146.) There is no provision of law in this State whereby "charitable institutions," either *eo nomine*, or any class of institutions established by private persons, whether under acts of incorporation or otherwise, which could fairly be included under the general designation of "charitable institutions," are exempted from assessment for local improvements. (Part 1, chap. 20, title 1, R. S.; 1 R. S. 583; Laws of 1853, chap. 122; Laws of 1869, chap. 708.) The prior valuation of the property by the ward

assessors, for the purposes of taxation, was entirely regular, and is sufficient to support this assessment up to the amount of one-half such prior valuation. (*Matter of St. Joseph's Asylum*, 69 N. Y. 353; *Matter of St. Mark's Church*, 2 Hun, 381, affirmed by Court of Appeals, 74 N. Y. 610; *Hebrew Benevolent Soc.*, 70 id. 476.) If the court consider it necessary that the sewer should be on a district map, in the absence of proof of its location, it will presume that it was east of the center line of Ninth avenue, and not in district One and a half, and that it was built in accordance with the plan of the adjoining district. (*Matter of Ingraham*, 64 N. Y. 310.) It was not necessary that the assessment for the sewer in question should be confirmed by the common council of the city of New York. (Laws of 1861, chap. 308.)

EARL, J. This action was commenced by the plaintiff to vacate and restrain the collection of an assessment imposed upon its land for the expense of a sewer.

James H. Roosevelt died in 1863, leaving a will in which he gave a large property to trustees named, for the purpose of founding and maintaining a hospital in the city of New York, and he directed the trustees to apply to the legislature for proper acts to incorporate, secure and perpetuate such hospital. In compliance with these directions the trustees applied to the legislature and by the act chapter 4 of the Laws of 1864, the plaintiff was incorporated.

By section 3 of the act it is provided that "the property, real and personal, of said corporation shall be exempt from taxation, and shall be entitled to the benefit of the provisions of law relative to charitable institutions."

In 1873 there was imposed upon the land of the plaintiff, owned and held by it for hospital purposes, an assessment of nearly $10,000, for the expense of a sewer constructed near such land, and the claim of the plaintiff is, that its land was exempt from such assessment by virtue of the section cited. We agree with the courts below that this claim is not well-founded.

In a broad sense, taxes undoubtedly include assessments, and the right to impose assessments has its foundation in the taxing power of the government; and yet in practice, and as generally understood, there is a broad distinction between the two terms. Taxes, as the term is generally used, are public burdens imposed generally upon the inhabitants of the whole State, or upon some civil division thereof, for governmental purposes without reference to peculiar benefits to particular individuals or property. Assessments have reference to impositions for improvements which are specially beneficial to particular individuals or property and which are imposed in proportion to the particular benefits supposed to be conferred. They are justified only because the improvements confer special benefits and are just only when they are divided in proportion to such benefits.

What the legislature undoubtedly meant was to exempt the plaintiff from such taxation as it would, but for the exemption, have to share for governmental purposes with all the other persons in the ward or city or State. It cannot be supposed that it was intended to exempt it from assessments made for the expense of improvements specially beneficial to its property and to impose the whole of such expense upon other property or upon the public generally. If such had been the intention, the legislature would have used more comprehensive terms, particularly as it must be presumed to have known the wide distinction in the city of New York between taxes and assessments, and the fact that taxes and assessments were there imposed for different purposes, upon different systems and by different officers.

These views are fully sustained by authorities quite uniform. In *Matter of the Mayor, etc., of New York* (11 Johns. 80), certain churches claimed exemption from assessments for street improvements, under an act passed April 8, 1801, which exempted churches from being "taxed by any law of the State," and the exemption was denied on the ground that such assessments were not taxes within the meaning of the act. In *Bleecker* v. *Ballou* (3 Wend. 263), SAVAGE, Ch. J., speaking of

an assessment for street improvements, said there was no doubt that such an assessment was not a tax. In *Sharp* v. *Speir* (4 Hill, 76), it was held that a statute which authorized the sale of land for a tax did not authorize the sale for an assessment for benefits. In *Hassan* v. *City of Rochester* (67 N. Y. 528), it was held that the provisions of the Revised Statutes (1 R. S. 387, § 1) exempting from taxation lands belonging to the State did not exempt such lands from assessments for local improvements. Judge MILLER, writing the opinion, said : " A manifest distinction exists between taxes and assessments, which is distinctly recognized in the decisions. And it is held that an assessment is not a tax in many reported cases." (See, also, Cooley on Taxation, 147, where, in a note, many cases very much in point are collated.) This line of decisions, quite uniform in this State and elsewhere, may be supposed to have been known to the legislature, and its language to have been used in reference thereto.

There is nothing in conflict with the authorities cited in *Matter of Van Antwerp* (56 N. Y. 261). In that case it was decided that the right to impose an assessment for local improvements is based upon the taxing power possessed by the government, and that with reference to that power an assessment is a tax, and so, undoubtedly, it is. But the point here is that while taxes and assessments are both fundamentally based upon the taxing power, they are widely different species of taxation. In *Harvard College* v. *Aldermen of Boston* (104 Mass. 470), the college was held to be exempt from assessments for street improvements, under a provision in its charter which exempted its property from " all civil impositions, taxes and rates " — language much broader in its import than that used in plaintiff's charter.

The scope of the word *taxation*, as used in the charter, is not enlarged by a consideration of the object for which the plaintiff was incorporated. The object was the establishment " of a hospital for the reception and relief of sick and diseased persons, and its permanent endowment pursuant to the directions of the last will and testament of its founder." It can-

not be supposed that this object will be defeated by assessments made for benefits to its property from local improvements. It must be assumed that such assessments will be justly and fairly made, and that they will not exceed the benefits actually conferred. If they are not thus made, the plaintiff may resist them in the manner in which all citizens are obliged to fight against unjust, unequal and unfair taxation.

It is said that the purpose was to found a permanent hospital and that the permanency may be defeated if plaintiff's property is liable to be swept away by assessments, and that therefore the assessments should not be allowed. The attribute of permanency is a chartered privilege. The legislature did not undertake to guaranty the perpetuity of the hospital against all contingencies. Its property may be swept away by bad management, by debts lawfully created, or by assessments. But it cannot be supposed that the legislature intended to secure the permanency of the hospital, said to be endowed with several millions of dollars, by the exemption from taxation. In consideration of the public good which the hospital would accomplish and the charitable use to which its funds were to be devoted, the legislature simply intended that its funds should not be depleted by general taxes taken for public purposes. To comply with the founder's will, the legislature was required to grant a "liberal charter," and hence it is claimed that the exemption from taxation should be held also to exempt from assessments, and that unless it is so held the charter is not liberal within the meaning of the will. But the charter granted is a liberal one. It is perpetual. It enables the plaintiff to take and hold forever all the property devoted to it by the founder not only, but to take without limit property from other sources, and to hold without limit real and personal property. Besides this, all the immense property it may thus acquire is exempted from taxation for public purposes, and, in addition to all this, it is entitled to the benefit of all provisions of law relative to charitable institutions. Such a charter certainly cannot be characterized as illiberal, and it cannot be supposed that the legislature in-

tended, in order to conform to the will of the founder, to go further, and, for an unlimited amount of real estate in the city of New York, to create an exemption from assessments possessed by no other charitable institution in the State.

The exemption claimed finds no sanction in the general legislation of the State or in public policy. All colleges, churches, seminaries of learning, court-houses, jails, school-houses and even the lands of the State, unless by appropriate words specially exempted, are liable to be assessed for local improvements. In all cases where exemption from assessments is intended it is so expressly stated in the law. It is provided that "no tax or assessment" shall, at any time, be imposed upon the mint or assay office of the United States in the city of New York (1 R. S. 932, 933 [6th ed.]); and that "every poor-house, alms-house, or other place provided by any city or town or county for the reception and support of the poor, and all real and personal property whatever belonging to or connected with the same shall be exempt from all assessments and taxation levied either by the State or by any county, city, town or village." It has never been supposed that the real estate of a minister exempted by law from taxation was also exempt from assessments for local improvements.

There is a still further suggestion to be made. Laws exempting property from taxation are to be strictly construed. Taxation is the rule; exemption the exception, and before any one can claim exemption from what would otherwise be his just share of a tax or assessment, he must find a plain warrant for such exemption in the law. (*Buffalo Cemetery* v. *City of Buffalo*, 46 N. Y. 506.) In view of what has been said, it would certainly be going to an extraordinary length to say that the exemption from assessments in plaintiff's charter is plain or free from reasonable doubt. We must, therefore, hold that plaintiff's property, while exempt from taxation, is not exempt from improvement assessments.

The further claim is made that even if the plaintiff's land was not exempt from assessments, there was no basis for the assessments complained of, as there had been no previous val-

uation of the land for the purposes of taxation. (Laws of 1840, chap. 326, § 7; *Matter of Second Avenue M. E. Church*, 66 N. Y. 395.) This point was not taken on the trial. The defendant's counsel offered in evidence a book from the tax office in the city of New York, which, as is stated in the case as presented to us, "showed that the premises in question had been valued for the purposes of taxation in the year 1866, by the commissioners of taxes." This was objected to, not on the ground that it did not properly or sufficiently show the valuation of 1866 for the purposes of taxation, but upon the ground that the commissioners of taxes had no right to value the premises for the purposes of taxation in 1866 because the premises at that time belonged to the plaintiff and were exempt from taxation. The objection was overruled and the book received in evidence, and it showed a valuation in 1866 upon all the land affected by the assessments in question. It cannot now, therefore, be objected that the valuation was not sufficiently proved. That the valuation although made in 1866 was sufficient as a basis for the assessments is no longer open to dispute. (*Matter of St. Joseph's Asylum*, 69 N. Y. 353; *Matter of Hebrew Benevolent O. A. Society*, 70 id. 476; *Matter of St. Mark's Church*, 11 Hun, 381; affirmed in this court, 74 N. Y. 610.) Besides if the plaintiff claimed that there was no basis in the prior valuation for these assessments it should have shown it. This it did not attempt to do.

(Dissenting.) But a further objection to these assessments is made which seems to me to be insuperable. The assessments were laid for a sewer in Ninth avenue between Fifty-fifth and Fifty-seventh streets and in Fifty-seventh and Fifty-eighth streets. The objection is that no sewer in Ninth avenue between the two streets named is laid down on the plan devised by the Croton Aqueduct board and hence that the sewer was unlawful under section 8 of the act chapter 381 of the Laws of 1865. Section 1 of that act provides that the Croton Aqueduct board shall have power to devise and frame a plan of sewerage and drainage of the whole city. Section 2 provides that the board shall lay out the city into as many sewerage districts as they may

deem necessary for the purposes of drainage, and that they shall also determine and show on suitable maps or plans the location, course, size and grade of each sewer and drain proposed for each of the districts and the proposed alterations and improvements in existing sewers, and that they shall also determine and show on said maps or plans the contemplated depth of the sewers below the surface and the established grades of the streets and avenues in each district, and such other particulars as may be necessary for the purpose of exhibiting a complete plan of the proposed sewerage therein. Section 4 provides that upon the completion of the map or plan for the drainage of any sewerage district such map or plan shall be the permanent plan for the sewerage of such district, subject, however, to such subsequent modifications as may become necessary in consequence of alterations made in the grade of any street or avenue or part thereof in said district or otherwise; that copies of such complete plans shall be made and filed by the board in the offices of the common council, the comptroller, street commissioner and city inspector. Section 5 provides that upon the completion of the plan of sewerage and the filing copies thereof as required in section 4, or as soon thereafter as may be convenient, the board shall cause printed specifications to be made in accordance with the plan of the work proposed to be done in the district, and shall thereupon invite proposals and shall contract for the whole or any part of the work in the district. Sections 6 and 7 provide for payment of the expenses of the work, by assessments upon lands benefited. Section 8 provides as follows: " It shall not be lawful hereafter to construct any sewer or drain in the city of New York unless such sewer or drain shall be in accordance with the general plan devised by said Croton Aqueduct board for the sewerage of the particular district in which such sewer or drain is proposed to be constructed."

Now, what plan was meant in section 8 ? Evidently the plan mentioned in section 2, showing the location, course, size, grade and depth of the sewer — the same plan required to be filed by section 4. No other plan is spoken of in the

act, and manifestly no other plan would answer the purposes of the act. Unless this sewer was in accordance with such plan, its construction was absolutely prohibited by section 8, and a valid assessment for its construction could not be laid. (*Matter of the Protestant Episcopal School,* 46 N. Y. 178; *Matter of Mayer,* 50 id. 504.)

Upon the trial the plaintiff proved a map, showing the plan of the sewerage district, in which this sewer was constructed. There was no dispute upon the trial that the plan thus proved was the plan of that sewerage district, and it was undisputed that this sewer in Ninth avenue, between the streets named, was in no way laid down or indicated upon that map, and the court, at Special Term, so found. ' But it also found that " in no other respect does it appear that the said sewer was not in accordance with the general plan adopted in said district." In what other respect could it appear? It does not appear on the plan in any way. There is no room for presumptions. The plan is proved and it does not appear there. But it is said, in the opinion at General Term, that it was sufficient under the act of 1865 if there was a general plan of the sewerage district in which the sewer was constructed, and that it was not neces- sary for the line of this sewer to be indicated thereon. We cannot assent to this. It passes our comprehension how this sewer can be said to have been constructed according to a plan upon which it is in no way mentioned or indicated, particularly when the plan is required to show the location and course of every sewer.

The last objection to these assessments must, therefore, be sustained and the judgment must be reversed and new trial granted.

Folger, Ch. J. I am not able to agree that this assessment is open to the objection that the construction of· this sewer was forbidden by the act of 1865. It may be conceded that no sewer can be lawfully constructed, nor even a contract made therefor, or notice put out for bids and proposals to do the work, until a general plan for the sewerage of the district has

been devised, and maps made and filed on which that plan is shown. No case yet decided by this court has gone farther than that. (*In re Blodgett*, MS. 1870; *In re Prot. Epis. Pub. School*, 46 N. Y. 178; *In re Mayer*, 50 id. 504.) It has not yet been held, that after a general plan has been devised and a map filed, there may not legally be made an alteration in the plan, or an addition to the sewers proposed by it. The fourth section of the act (chap. 381, of 1865, pp. 715–16) permits such subsequent modification as may become necessary in consequence of alteration made in the grade of any street, or otherwise. We think that the permission to subsequently modify is not confined to a necessity arising from an alteration of grade of street. An application of the maxim *noscitur a sociis*, though made to the word "otherwise" would not restrict it so that it would not cover the case of the opening of a new street in a district already brought within a general plan, and laid down on a map, or the case of a sewer newly proposed for an old street lying within the district and appearing on the map made. The plan that is to be made is to be a general one, that shall show the complete plan proposed. (§ 2.) Though each sewer proposed when the plan is made is to be shown on the map, it is not meant that no other sewer shall ever be made than one that is thus shown. A complete plan will be made, when the location, course, size and grade of each sewer deemed needful for the district when the plan is devised is shown on the map. And such a plan and a map must precede the construction of any sewer. But if the needs of the district, or any part of it, call for more sewers or another sewer, there is not a prohibition against making them or it. The prohibition is against making them or it, out of accordance with the general plan, so that the size, the course, the grade shall be kept in conformity with those conditions of the sewers laid down on the general plan.

The object was uniformity, so that all sewers in a district might act with like effect, and none in opposition to another or some others. When the location, course, size and grade of several sewers in a district had been determined upon, and the

plan set down on a map, there was a general system of construction established for the district that would effect uniformity of operation and result.

If a new sewer should be built, not in accord with the general plan in these conditions, want of co-operation in action would probably result. Hence it was well to put into the statute, the section (§ 8) forbidding the construction of any sewer unless it should be in accordance with the general plan for the particular district in which it is proposed to build it. This section harmonizes with the fourth (*supra*), so that uniformity in general design and mode is preserved, while an emergency or newly-arising need may be met and satisfied. It would not have needed the eighth section, but for the provision in the fourth. For the provisions of the sections from the first to the fifth inclusive must be observed as conditions precedent, before work could be done or begun on a sewer, as was held in the cases cited above. But the fourth section containing the exceptions for a necessity not foreseen and provided for, lest that should be used to interrupt uniformity in general characteristics and operation, the eighth section was added, enjoining general uniformity.

We are of the opinion, therefore, that it is not enough for the purpose of vitiating an assessment to show a map that does not display the particular sewer complained of unless it is also shown, either that that sewer does not accord in its characteristics with that general plan, or that there has been no general plan devised and mapped and filed.

Agreeing with my brother, EARL, J., in the other points discussed in his opinion, I think that the order appealed from should be affirmed.

All concur with EARL, J., as to the two points first discussed in his opinion; all concur with FOLGER, Ch. J., as to the third point, except RAPALLO and EARL, JJ., dissenting.

Judgment affirmed.