B. WRIGHT McCOLLOM, Plaintiff, *v.* THE CITY OF LOCKPORT and Another, Defendants.

Supreme Court, Niagara County, January 18, 1930.

*Storrs & Storrs* [*W. W. Storrs* of counsel], for the plaintiff.

*George W. Riley, Corporation Counsel,* for the defendants.

*Donald Moore,* for certain interested property owners.

CHARLES B. WHEELER, Official Referee. This action is brought by the plaintiff as a taxpayer of the city of Lockport to restrain the

issue and sale of bonds of the city amounting to some $36,650 proposed to be issued to pay for the construction of a sewer or drain in Price street in said city.

By the official action of the council of the city of Lockport the cost of this sewer was made a charge against the city at large to be paid for by general taxation against all the taxable property of the city.

The plaintiff contends that the sewer in question is of the nature of a local improvement and should be paid for by an assessment against the property benefited, and that the council under the charter of the city had no power or authority to make the cost a general charge against the city at large.

The evidence is that about forty years ago a sewer was built in Price street, and the cost of this sewer was paid for by local assessment on property in its immediate neighborhood benefited by it. All additional extensions and laterals connected with this sewer have been paid for by local assessments in the same way. The original sewer served well the district it was intended to benefit, but the city has grown, and the neighborhood built up, and at the present time the old sewer appears to be inadequate in size to take care of the sewerage and drainage of the district served.

It was accordingly determined by the common council of the city to build a new sewer in Price street. Bids for doing the work were invited and its cost determined.

Thereupon the common council, over the veto of the mayor, passed an ordinance or resolution providing for the issuance of the bonds in question. Whether this action by the common council of the city was authorized turns largely on the provisions of the city charter and the character of the improvement to be made.

Section 175 of the charter of the city of Lockport (Laws of 1911, chap. 870) has the following provisions touching public improvements: " The common council shall have power to enact ordinances and by-laws pertaining to streets, highways, parks and other public places in the city, and to make or order and direct the making of such general or local improvements, in the streets * * *; it may make, regulate and repair * * * public sewers, drains and vaults * * * and generally it may order and direct all public improvements and expenditures."

The provisions of the charter governing the installation of " local improvements " are found in article 10, sections 220 et seq., and relate to the construction of sidewalks, sewers and water pipes, and for the paving, repaving, macadamizing, graveling, curbing, guttering or otherwise improving streets.

Under section 220, whenever the common council shall determine

that the expense of any improvement shall be defrayed by an assessment upon the real estate which it deems benefited thereby, it shall declare the same in the ordinance directing such improvement, specifying the portions of the city which it deems will be benefited thereby, and the same shall thereupon be deemed and treated as a local improvement. This section further provides that, unless otherwise provided in the charter, the common council shall not pass or adopt any resolution or ordinance for a local improvement until there shall be filed with the city clerk a petition or petitions for such improvement signed by persons owning at least one-third of the street frontage on the street or streets wherein the assessment is to be laid, of the lands to be assessed for the improvement.

By section 222, a petition is not required for the construction of a common or public sewer or drain, or any outlet to an existing public sewer or drain, in any case where the common council shall determine, and in the ordinance therefor declare, that the construction thereof is necessary for the public health, or to obtain a lawful outlet to an existing public sewer or drain. Nor is a petition necessary for the construction of a water pipe when the board of health and the common council shall declare that the construction thereof is necessary for the public health.

By section 223, a petition is not necessary for the improvement of certain specified streets, declared and determined to be a public necessity as main thoroughfares leading into the city. The total cost of improvements on the main thoroughfares specified in this section are to be borne one-half from the general fund and the other one-half is to be assessed on the abutting property in like manner and with the same effect as provided for local improvements.

Section 226 provides that no ordinance for a local improvement shall take effect, nor shall any proceedings relative to any local improvement ordered thereby be had or taken under it, until opportunity has been given for all parties interested to be heard before the common council upon the question of the adoption of the ordinance.

By section 229, the expense of a local improvement is to be equally assessed upon the real estate in said city which the common council deems benefited by the said improvement, according to the benefits that may result therefrom. But with the exception that where the local improvement is for paving or otherwise improving a street, one-third of the total expense of such improvement is to be assessed against the city at large, except as provided in section 223 for the improvement of certain main thoroughfares specified in that section.

Section 176 provides that the common council may construct, repair and maintain bridges, culverts, reservoirs and crosswalks, and by a two-thirds vote of all the members elected, determine that the same shall be at the expense of the city, or may assess the expense thereof, or such portion of the expense thereof as it shall deem equitable, upon the lands benefited thereby.

This section also provides that in case of the total or partial destruction of or injury to any bridge, culvert, *sewer* or crosswalk, in or along any public street or highway in said city, *by a violent storm or freshet or other unusual elemental calamity*, so that the passage along said street or highway shall be obstructed or prevented, and public convenience shall require the immediate reconstruction or repair of any such bridge, culvert, sewer or crosswalk, the common council is authorized to cause the expense thereof, or such part thereof as it shall deem equitable, to be assessed upon the real estate deemed benefited thereby. In case the whole or any part of such expense of construction, repair or reconstruction shall be charged upon the city, such expense or part thereof may be included in the annual tax budget to be raised in the same manner as other charges against the city are raised.

No petition to the common council for the construction of the proposed sewer was presented to or filed with the city clerk, signed by persons owning at least one-third of the street frontage on the street or streets wherein such assessment was to be laid.

The council did not specify in the ordinance the portion of the city it deemed would be benefited by the drain, but its construction has been deemed and treated by it as a general charge upon all real property of the city regardless of any benefits derived therefrom.

The evidence before the referee shows that as matter of fact the district or territory which will be benefited by the construction of the sewer in question is a limited one.

The city of Lockport is divided practically into three levels, and there is no pretense or evidence that the sewer in question will in the slightest degree benefit any other section of the city than the immediate one where it is to be built.

Under such circumstances it is difficult to see how this sewer can be termed anything but a local improvement. While the charter of the city does not in terms define what constitutes a local improvement, nevertheless the meaning of the term appears to be clearly defined by the decisions of the courts.

" Local assessments for improvements in cities or villages are contributions which property owners are required to pay, not as general burdens for the support of government, but as an equivalent or compensation for the enchanced value which the property has

derived from the improvement. The improvement is supposed to have conferred an additional value upon the property in the locality, and, being a special benefit to particular property beyond what is conferred by general taxation, it is deemed to be equitable and just that the property so benefited should contribute to the expense. (*Sharp* v. *Spier*, 4 Hill, 77; *Sharp* v. *Johnson*, id. 92; *In re Ford*, 6 Lans. 92; *Matter of the Mayor of New York*, 11 Johns. 77; *Roosevelt Hospital* v. *Mayor*, 84 N. Y. 108; Dillon on Munic. Corp. § 761; Cooley on Taxation, 675.) " (*Matter of Hun*, 144 N. Y. 472, 477.)

A local improvement is a public improvement which, by reason of its being confined to a locality, enhances the value of adjacent property, as distinguished from benefits diffused by it through the municipality, and through a system of sewers to relieve the congested condition of existing sewers by furnishing additional means, whereby the surface water caused by excessive rain may be carried away, may benefit all the property in a village, if the improvement will specially enhance the adjacent property, it is local and may be paid for by special assessment. (*Northwestern University* v. *Village of Wilmette*, 230 Ill. 80; 82 N. E. 615.)

" A local improvement ' is a public improvement, which, by reason of its being confined to a locality, enhances the value of adjacent property, as distinguished from benefits diffused by it through the municipality.' " (*Illinois Cent. R. Co.* v. *City of Decatur*, 154 Ill. 173; 38 N. E. 626, 627.)

" The technical or legal meaning of the phrase ' local improvement ' is a public improvement which, although it may incidentally benefit the public at large, is made primarily for the accommodation and convenience of the inhabitants of a particular locality, and which is of such a nature as to confer a special benefit upon the real property adjoining or near the locality of the improvement." (*Crane* v. *City of Siloam Springs*, 67 Ark. 30; 55 S. W. 955.)

Therefore, the referee finds as matter of fact that the sewer in question must be deemed and treated as a local improvement.

The improvement does not fall within the provisions of section 222 of the charter where the council may without petition order the construction of a public sewer, or an outlet to an existing sewer or drain, where the council shall declare it is necessary for the public health.

It apparently falls within the provisions of section 229 declaring the expense of local improvements is to be equally assessed upon the real estate in the city which the common council deems benefited by said improvement.

Nor does the construction of the sewer in question come within

the exception of section 176 authorizing action by the council where there has been a total or partial destruction of a bridge, culvert, sewer or crosswalk by violent storm or freshet or other unusual elemental calamity. No such facts exist in this case. The defendants' counsel contends that it is beyond the province or power of the court to interfere with the judgment of the city council or its officials in determining whether or not the cost of the sewer should be borne as a general charge on the city or treated as a local improvement and cites many cases to support the contention.

The referee does not differ with counsel on the general proposition where a case is presented involving the exercise of discretion.

But such is not this case. The facts here are practically uncontroverted that the district to be benefited is a limited one, and that by far the greater part of the city will receive no benefit whatever from the construction of the sewer in question.

The council must be governed by the facts in the particular case and cannot call an improvement a general improvement when in fact it is a local improvement and thus enlarge its powers or authority.

It is urged that the city in building the original sewer fell into error in not making it sufficiently large to meet the requirements of the present time incident to the growth of the section and present demands. Such may possibly be the case, but such considerations, we think, in no way justify a departure from the plain requirements of the charter. Such conditions not infrequently arise, and must be met as they arise in the way pointed out by the governing law of the municipality. We reach the conclusion that the injunction prayed for should be made permanent, with costs of this action to the plaintiff.