## HAGGERTY v. CITY OF DEARBORN.

1. TAXATION—PROTEST AT TIME OF PAYMENT.

A protest at the time of payment of a tax or special assessment for an improvement in a home-rule city is now necessary to recover back the payment (CL 1948, § 211.53).

2. SAME—SEWER—SPECIAL ASSESSMENT—PAYMENT UNDER PROTEST.

Recovery of a second instalment of a special assessment for a sewer in a home-rule city may not be had by the party who paid it, where no protest was made at the time of payment (CL 1948, §§ 117.4b, 117.4d, 211.53; Dearborn City Charter, §§ 16.6, 16.14).

3. SAME—INJUNCTION—STATUTORY PROHIBITION.

The statutory prohibition against injunction to stay proceedings for assessment and collection of taxes under the general property tax act is not an absolute prohibition as injunctions may be granted in case of irreparable injury or unusual hardship (CL 1948, § 211.114).

4. SAME—PAYMENT UNDER PROTEST—IRREPARABLE INJURY—INJUNCTION.

The requirement that taxpayer pay tax or special assessment under protest and then sue to recover therefor does not constitute a showing of irreparable injury or unusual hardship sufficient to justify relief by way of injunction against home-rule city's imposition of special assessments for sewer (CL 1948, §§ 117.4b, 117.4d, 211.114; Dearborn City Charter, §§ 16.-6, 16.14).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 51 Am Jur, Taxation § 1189.
[1, 2] When may payment of tax or assessment be regarded as involuntary.  64 ALR 9; 84 ALR 294.
[3] 51 Am Jur, Taxation § 1222.
[4] 51 Am Jur, Taxation § 1226.
[8] 51 Am Jur, Taxation § 1225.
[9] 14 Am Jur, Costs § 91.

5. DRAINS—LATERAL SEWERS—SPECIAL ASSESSMENT—VALIDITY.

Special assessment as for a lateral sewer was not invalidated as to plaintiff by reason of the fact that sewer was originally laid out as a trunk-line sewer and an easement obtained on that basis from another property owner and after the sewer was constructed the city determined it was a lateral sewer, the grantor of the easement repaid amount of its share of the special assessment from general fund of the city and plaintiff commenced suit to determine validity of the assessment upwards of a year after special assessment roll had been confirmed (CL 1948, §§ 117.4b, 117.4d, 211.114; Dearborn City Charter, §§ 16.6, 16.14).

6. MUNICIPAL CORPORATIONS—SEWERS—DISCRETION OF OFFICERS.

A city in the exercise of legislative discretion may determine that a trunk-line sewer shall be a lateral sewer.

7. SAME—HOME-RULE CITY COUNCIL—DISCRETION OF OFFICERS—APPORTIONMENT OF BENEFITS—SPECIAL ASSESSMENT.

A home-rule city council is presumed to have acted in good faith and correctly exercised its discretion in apportioning benefits for construction of sewer of which plaintiff landowner within special assessment district had actual notice that sewer was being constructed and constructive notice that city council would meet as a board of review to hear objections to the special assessment roll (CL 1948, §§ 117.4b, 117.4d, 211.53; Dearborn City Charter, §§ 16.6, 16.14).

8. INJUNCTION—ADEQUACY OF REMEDY AT LAW—PAYMENT OF TAXES UNDER PROTEST.

Plaintiff, subjected to payment of special assessments for construction of lateral sewer by a home-rule city, who failed to pay his assessment under protest and sue to recover within 30 days was not entitled to injunctive relief as to payment of assessments, since his remedy at law was adequate (CL 1948, § 211.53).

9. COSTS—CONSTRUCTION OF PUBLIC ACT.

No costs are allowed on appeal in suit involving the construction of various provisions of the public acts and a home-rule city charter (CL 1948, §§ 117.4b, 117.4d, 211.114; Dearborn City Charter, §§ 16.6, 16.14).

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted October 9, 1951. (Docket No. 60, Calendar No. 45,200.) Decided January 15, 1952.

Bill by John S. Haggerty against City of Detroit and others to cancel special assessment and remove cloud from title. Executor of last will and testament of plaintiff substituted as party plaintiff. Decree for plaintiff. Defendants appeal. Reversed and bill dismissed.

*Burke, Burke & Smith,* for plaintiff.

*Dale H. Fillmore,* Corporation Counsel, and *Joel K. Underwood,* Deputy Corporation Counsel (*Robert E. Childs*), of counsel, for defendants.

SHARPE, J. Plaintiff filed a bill of complaint in the circuit court of Wayne county to enjoin the city of Dearborn and its treasurer from enforcing the collection of a special assessment imposed for the purpose of defraying the cost of construction of a sewer.

Plaintiff is the owner of approximately 64 acres of land, not platted or subdivided, within the city limits of the city of Dearborn. Prior to the installation of the sewer, the residents of this area were using septic tanks. It appears that Forum, Inc., owner of a piece of property adjacent to and south of Ford road, requested the city council to consider installation of a sewer along Ford road. The council directed the city engineer to prepare the necessary plans. On January 11, 1946, the city engineer wrote a letter to the Sinclair Refining Company, which is the owner of a large tract of land within the drainage district, advising it of the intention of the city to construct a combined sewer and describing its course. The letter stated, "this sewer is to be constructed by funds supplied by the city without assessment" and requested an easement be granted by Sinclair Refining Company to the city. On March 19, 1946, the council adopted a resolution which authorized the city to obtain easements to certain property "to

construct a trunk sewer to serve the area north of Michigan avenue and west of Wyoming avenue." None of the easements sought included plaintiff's land. On June 4, 1946, the council adopted a resolution changing the desired easements "to better serve the community it was designed for" which included plaintiff's land. On July 2, 1946, the council adopted a further resolution withdrawing and voiding the descriptions of easements set forth in the resolutions of March 19 and June 4, 1946, and set forth the easements then sought which did not include a right-of-way over plaintiff's land.

On July 16, 1946, the Sinclair Refining Company executed an easement to the city of Dearborn of the right, privilege and authority to construct and maintain and repair a trunk-line sewer over and through its property. On August 28, 1946, the city engineer informed the city council that the cost of the sewer was estimated at $71,000, but nothing was said as to the type of sewer. On September 3, 1946, the council referred the matter to the city controller to determine the method of financing the cost of the proposed sewer.

On October 8, 1946, the city controller submitted to the city council the method of financing the construction cost of the proposed sewer. He stated:

"Such sewer should be constructed on a special assessment basis in view of the fact that it serves a particular section of the city as a lateral sewer.

"However, if your honorable body deems to construct this as a sewer trunk, then the estimated amount of $71,000 could be charged directly to the public improvement reserve fund."

On November 6, 1946, by resolution, the council determined to construct a lateral sewer to serve land between Miller road and Wyoming avenue north of the Detroit Industrial Expressway, created a special assessment district known as No 444, and deter-

mined that the whole cost of such public improvement was to be paid by special assessment upon property in the district including plaintiff's lands.

The following is a copy of the council proceedings of August 5, 1947:

"The city clerk reported that Tuesday, August 5, 1947, is the date set to review special assessment roll No 444 and to hear objections to the special assessments as assessed in said roll No 444.

"President of the council Esper announced that this was the time set for the reviewing, correcting and listening to objections to the assessments as assessed in special assessment district No 444.

"Objections were received from Sinclair Refining Company, 1761 Waterman avenue, Detroit.

"By Councilman Beadle, supported by Councilman Griffith:

"8–1038–47. WHEREAS: The council of the city of Dearborn with 1 member of the board of assessors present has met at this time as a board of review for the purpose of reviewing special assessment roll No 444 and hearing objections to the special assessments as assessed in said roll, made pursuant to a resolution of the council of the city of Dearborn and assessed for the purpose of defraying the cost of constructing a lateral sewer to serve land between Miller road and Wyoming avenue north of the Detroit Industrial Expressway, in said city of Dearborn.

"RESOLVED: That said special assessment roll No 444 be and the same is hereby approved.

"RESOLVED FURTHER: That in conformity with the requirements of the charter of the city of Dearborn, the council does hereby confirm said assessment roll in all respects and finds and determines that said roll contains a description of all the parcels of land constituting the assessment district; that the district as a whole and each parcel of land therein will be benefited to the full extent of the assessment levied against the district and against each parcel of land respectively; that the assessments have been

apportioned to each parcel of land in accordance with the benefits accruing; that no assessment exceeds the assessed valuation of the parcel of land assessed and that all of the provisions of the charter of the city of Dearborn and of law authorizing all or part of the cost of a public improvement to be assessed to a special assessment district have been complied with in the preparation of the assessment roll herein confirmed.

"RESOLVED FURTHER: That the clerk is ordered to indorse on said roll the date of confirmation.

"RESOLVED FURTHER: That the council determines that all assessments appearing in said assessment roll exceeding $15 in amount shall be divided for collection into 5 equal instalments and the board of assessors is hereby authorized and directed to divide said special assessments accordingly, the first instalment to be due and payable on the 28th day following the date hereof and 1 instalment to become due and payable on the same day of the month each consecutive year thereafter until fully paid; provided, however, that no assessment of less than $15 shall be divided into instalments but that the entire assessment in such cases shall be due and payable 28 days from the date hereof.

"RESOLVED FURTHER: That all special assessments contained in said special assessment roll be collected according to law and pursuant to the requirements of the charter of the city of Dearborn.

"The resolution was unanimously adopted."

August 13, 1947, plaintiff's testate received a bill for $12,306.48 as his share of the special assessments levied against his land benefited by this improvement. August 18, 1947, plaintiff's testate wrote a letter to the city council stating that "In my opinion, this is a trunk sewer and should be a general assessment."

August 27, 1947, plaintiff's testate was informed by the city clerk that his communication of August 18, 1947, had been submitted to the city council on

August 19, 1947, which body referred it to the corporation counsel and the city engineer.

February 25, 1948, the corporation counsel and city engineer advised the city council that plaintiff's testate's objections to special assessment district No 444 were invalid; that the council had exercised its discretion and created a special assessment district; that the roll was confirmed and the time for objecting and instituting suit to contest the validity of the roll expired prior to the date of the taxpayer's objections; therefore, the special assessment for the lateral sewer was a valid lien against his property and should be paid. This report was received and ordered filed by the city council March 2, 1948, and a copy thereof transmitted to plaintiff's testate, March 10, 1948.

Plaintiff's bill of complaint was filed October 4, 1948, and on October 25, 1948, defendants filed a motion to dismiss plaintiff's bill of complaint and quash service of summons. The reasons stated for dismissal are as follows:

"5. That the action of the plaintiff is not timely brought in accordance with the charter of the city of Dearborn limiting actions to review special assessment proceedings to 30 days from the date of confirmation of the roll.

"6. That the action presented by the plaintiff is not an action to review the proceedings.

"7. That the bill of complaint does not show on its face in what manner the discretionary legislative action of the council of the city of Dearborn is arbitrary, capricious or fraudulent and especially in what manner the action is arbitrary, capricious or fraudulent against the rights of the plaintiff or the property involved.

"8. That the plaintiff had an adequate remedy at law but time for bringing such law action expired 30 days after the date of confirmation of the roll according to the charter of the city of Dearborn."

This motion to dismiss was denied and on December 3, 1948, defendants filed an answer which contains the following:

"The defendants deny that the lateral sewer in special assessment district No 444 is a continuation of a trunk-line sewer which has its southern terminus near Michigan avenue and respectfully show unto the court that said trunk-line sewer is a project of the State of Michigan, State highway department, relative to the improvement and the installation of the Detroit Industrial Expressway, a State and Federal highway project.

"8. The defendants deny the allegations in paragraph 10 of the plaintiff's bill of complaint and respectfully show unto the court that, referring to the map of the special assessment district the lateral sewer in special assessment district No 444 is contiguous to the property of the plaintiff in that a connection from the plaintiff's property to this lateral sewer could be installed by crossing Ford road at a point near the southeast corner of the property of the plaintiff at Ford road, a distance of approximately 100 feet. The sewer serves a piece of land across from the property of the plaintiff, as appears by the map of the special assessment district. The defendants further answering said paragraph deny the necessity of the sewer being contiguous to the property of the plaintiff, as a matter of law, and that it is within the discretion of the council of the city of Dearborn in determining the limits of the special assessment district to include properties improved by the special improvement within a special assessment district including the lands of the plaintiff.
\* \* \*

"10. The defendants deny the allegations contained in paragraph 12 of the bill of complaint and respectfully show unto the court that the necessity for the constructing of the special improvement was for the purpose of removing storm and sanitary sewage and to remove the use of septic tanks as ap-

pears by the affidavit of Howard L. Lilley, assistant city engineer, heretofore pleaded in defendants' motion to dismiss, and that the determination of necessity is a legislative matter exclusively within the authority of the council of the city of Dearborn. * * *

"The defendants deny that there was no information given to the owners of property within the special assessment district in connection with the installation of the lateral sewer and respectfully show unto the court that the proceedings to create the special assessment district were published as required by law, as appears by the publication of the notices required by law in the creation of the special assessment district, on July 11, 18 and 25, 1948, as appears by the publication, copy of which is hereto attached and made a part hereof and referred to as defendants' exhibit 4, as published in accordance with the charter of the city of Dearborn in the official newspaper of the city. The defendants further answering admit the plaintiff filed a protest, but deny that the protest was filed within 30 days from the date of the confirmation of the roll, as required by the charter of the city of Dearborn. * * *

"The defendants, further answering, deny that the action of the council in relation to the special assessment district is an arbitrary and unjust discrimination against the rights of the plaintiff and respectfully show that such allegations are conclusions of fact and law."

The motion to dismiss having been denied, the cause came on for trial. On February 28, 1951, the decree was entered which held illegal the entire sewer tax assessment of $12,306.49 imposed against this plaintiff's real estate, relieved plaintiff from any and all liability and ordered that the cloud on his title be removed and that defendants and their agents were enjoined from enforcing the collection of this special assessment. No personal decree was entered requiring the return of any portion of the

assessment which plaintiff paid after the bill of complaint had been filed.

Defendants filed a petition for rehearing which reiterated their contentions advanced in the motion to dismiss and during the trial; in addition, defendants therein attacked the postulates upon which rested the trial judge's opinion, pointed out the lack of evidence to support plaintiff's contention that inadequate notice of the change from an intent to construct a "trunk" to "lateral" sewer had been given to plaintiff and particularly pointed out that plaintiff had an adequate remedy at law. This motion was denied on March 22, 1951.

In the opinion of the trial court, it is stated:

"From the record in this case it shows that the plaintiff acted promptly on receipt of the bill for the special assessment. I feel that he was entitled to rely on the easement already referred to and recorded in the Wayne county records; he had a right to rely on the statement that it was a trunk-line sewer and the cost of same in the amount of $71,000 could be charged directly to the public improvement reserve fund and not against a special assessment district.

"Counsel contends that the city and its responsible officials had a right to change their mind and to denominate the improvement as a lateral sewer instead of a trunk-line sewer. It may be conceded that they have this right, but I do not feel they can lull taxpayers into a sense of security, and then find fault that when the city changes its mind without notification to those interested and mails a bill for over $12,000 for an assessment, that the taxpayer has no recourse. I think that the defense raised by the city in this case comes with poor grace under all the circumstances, on the record as made in this case. * * *

"I am satisfied that the defendant cannot maintain its defense as advanced in its motion to dismiss this bill of complaint with respect to laches on the part of

the plaintiff. I feel that he acted promptly under all the circumstances, but even if not so, I do feel that he would be entitled to the relief prayed for because of the reasoning of our own Supreme Court laid down in the case of *Berston* v. *City of Flint,* 176 Mich 266. I feel that the facts in that case are quite analogous to the facts under discussion in this action. In that case we had a similar situation of the General Motors Company making an agreement with the city for a right-of-way across its property for a public sewer improvement. In this case we have a grant of easement given by the Sinclair Refining Company across its property for a so-called trunkline sewer which later was changed to bear the designation of a lateral sewer.   *   *   *

"I feel that anyone acquainted with the facts in this case would immediately answer that the sum allotted by condemnation proceedings would be considerably less; it now appearing that there would be no charge against the Sinclair Company or any requirement of the payment of any assessment or part thereof in sewer assessment district No 444; that I am of the opinion that there can be no assessment against the plaintiff in the same district, because of the reasons noted in this opinion and more particularly because I am of the further opinion that the law laid down in *Berston* v. *City of Flint, supra,* will not admit of it."

Defendants appeal and urge that plaintiff had an adequate remedy at law in that plaintiff must either pay his special assessment instalments under protest and within 30 days thereafter file his action in assumpsit for a refund, or, file suit within 30 days after the special assessment roll was confirmed, and then prove that there was a totally void assessment, fraud, or a total abuse of discretion.

It is not disputed that the city of Dearborn is chartered pursuant to the home-rule act (PA 1909, No 279, as amended), pertinent sections thereof providing that:

"Each city may in its charter provide:   *   *   *

"(2) For the installation and connection of sewers and waterworks on and to property within the city; for assessing the cost thereof to the several properties and making the same a lien thereon; and for the borrowing of money and issuing bonds in anticipation of the collection of such special assessments." CL 1948, § 117.4b (Stat Ann 1949 Rev § 5.2075).

"Each city may in its charter provide:

"(1) For assessing and re-assessing the costs or any portion thereof, of any public improvement to a special district."   CL 1948, § 117.4d (Stat Ann 1949 Rev § 5.2077).

Pursuant to the above statutory authority, the city of Dearborn's charter provides:

"Every special assessment roll ratified and confirmed   *   *   *   shall be final and conclusive." Chapter 16, § 16.6.

"Such special assessments and all proceedings upon which such special assessments are based shall be incontestable unless suit to test the validity thereof is instituted within 30 days after the confirmation of such special assessment roll." Chapter 16, § 16.14.

Prior to PA 1941, No 234, a payment made on a special assessment was deemed to be a payment under compulsion or duress, where the special assessment was by charter made a lien which attached to the real estate.   Hence, for valid reasons an action could be brought to recover the special assessment even if not paid under protest, see *Thompson* v. *City of Detroit,* 114 Mich 502.

Section 211.53, CL 1948 (Stat Ann 1950 Rev § 7.97), provides:

"Any person may pay the taxes or special assessments, or any 1 of the several taxes or special assessments, on any parcel or description of land, or on any undivided share thereof, and the treasurer shall

note across the face of the receipt in ink any portion of the taxes or special assessments remaining unpaid. He may pay any tax or special assessment, whether levied on personal or real property, under protest, to the treasurer, specifying at the time, in writing, signed by him, the grounds of such protest, and such treasurer shall minute the fact of such protest on the tax roll and in the receipt given. The person paying under such protest may, within 30 days and not afterwards, sue the township for the amount paid, and recover, if the tax or special assessment is shown to be illegal for the reason shown in such protest."

Under the above act a taxpayer may pay any tax or special assessment under protest and within 30 days and not afterwards sue for the amount paid, and recover, if the tax or special assessment is shown to be illegal for the reasons shown in such protest. In our opinion the act provides that a protest at the time of payment of the special assessment is necessary to recover back the payment. It follows that the payment of the second instalment without protest and after the trial was concluded cannot be recovered.

The principal question involved in this suit is the right of plaintiff to have the assessment cancelled and relieve his property from any liability for such payment. Section 211.114, CL 1948 (Stat Ann 1950 Rev § 7.168) provides: "No injunction shall issue to stay proceedings for the assessment or collection of taxes under this act." The above provision is not an absolute prohibition. Injunctions may be granted in case of "irreparable injury," see *Manufacturers National Bank of Detroit* v. *City of Detroit,* 285 Mich 273, or "unusual hardship," see *Sunday Lake Iron Co.* v. *City of Wakefield,* 323 Mich 497. In our opinion plaintiff has not shown irreparable injury or unusual hardship. He could have paid the tax under

protest and sued the city if he had a meritorious claim.

Plaintiff urges that the easement agreement of July 16, 1946, between Sinclair Refining Company and defendant city invalidated the special assessment. The record fairly shows that defendant city obtained the easement agreement from Sinclair Refining Company by holding out to it that the sewer would be a trunk-line sewer and paid out of the general funds of the city; and that after the sewer was constructed, determined that the sewer was a lateral sewer, subject to special assessment and proceeded to assess Sinclair Refining Company a tax of $28,711.30. The Sinclair Refining Company sought redress in the circuit court in 2 actions, 1 an action at law to recover the first instalment paid, and a proceeding in chancery to enjoin the collection of the remaining instalments. Sinclair Refining Company was granted relief on the theory that it gave the easement in reliance on the representations of officials of the city that the cost of constructing the sewer would be borne by the city. As a result of this decision the amount assessed to Sinclair Refining Company will now be paid out of the general funds of the city. Plaintiff along with other taxpayers in the city will share this expense.

In granting relief to plaintiff in the instant case, the trial court relied on *Berston* v. *City of Flint,* 176 Mich 266. In that case the city of Flint proposed to construct a sewer which would ultimately service an area containing approximately 200 acres, including some of the lands of General Motors. The city council determined that private owners of property in the assessment district should bear 75% of the cost of the sewer and 25% to be paid by the city. The city entered into an agreement with General Motors for an easement across its lands, whereby the city was to pay General Motors $2,000 for the

easement and a portion of its real estate was included in the special assessment district. Plaintiff in that case brought a suit to enjoin the city from comfirming the assessment roll and from entering into a contract for the construction of the sewer. It was there held that the value of the right-of-way was less than $2,000 and that the city should proceed in a legal manner to acquire the right-of-way at its true value and all lands of General Motors benefited by the improvement to be included in the special assessment district.

In the *Berston Case* there was an excessive payment for the right-of-way and failure to include in the assessment district certain property of General Motors that would benefit from the sewer. Moreover, suit was started prior to the confirmation of the assessment roll. In the case at bar, the property of plaintiff was included in the assessment district and suit was not started until after the assessment roll was confirmed and the sewer completed. In our opinion the above case is not authority for cancellation of the assessment on plaintiff's property.

Plaintiff urges that the chancery court has jurisdiction to grant relief because of the arbitrary and capricious action of the defendant city in changing the designation of the sewer from a trunk to a lateral sewer after publicly announcing it to be a trunk sewer and in waiting several months before notifying plaintiff of its disposition of his protest.

In *Trowbridge* v. *City of Detroit,* 99 Mich 443, we held that the city council had the power to reconsider a resolution fixing an assessment district and enlarge the district by subsequent action. We know of no legal reason why a city in the exercise of legislative discretion cannot determine that a trunk-line sewer shall be a lateral sewer.

The record shows that plaintiff had actual notice that a sewer was being constructed and constructive

notice by publication in the Dearborn Independent that on August 5, 1947, the city council would meet as a board of review to hear objections to the roll. It is the rule that the city council is presumed to have acted in good faith and correctly exercised its discretion in apportioning the benefits, see *Powers* v. *City of Grand Rapids,* 98 Mich 393. In the case at bar plaintiff has not sustained the burden of showing an abuse of discretion on the part of the city council.

We hold that under CL 1948, § 211.53, a party dissatisfied with his assessment for taxes, either for real or personal property or special assessment on real property must pay under protest, specifying in writing the grounds of such protest. The statute also provides that after paying under protest the party must begin his action within 30 days after such payment. Plaintiff's failure to comply with statutory provisions precludes relief in the instant case. He had an adequate remedy at law, but failed to exercise his right thereto.

The decree is reversed and plaintiff's bill of complaint dismissed, but without costs as there is involved the construction of a public act.

NORTH, C. J., and DETHMERS, CARR, BUSHNELL, BOYLES, and REID, JJ., concurred. BUTZEL, J., did not sit.