## WYZLIC v. CITY OF IRONWOOD.

1. EQUITY—FRAUD—PLEADING.
   Equitable relief is always available to relieve against fraudulent actions if the pleadings properly allege fraud, as fraud is the special province of equity.

REFERENCES FOR POINTS IN HEADNOTES
[1] 19 Am Jur, Equity § 39.
[2] 51 Am Jur, Taxation § 1223 *et seq.*

2. TAXATION—TAXPAYERS' SUIT—INJUNCTION—FRAUD—PRIVATE AP-
   PRAISAL.
   Taxpayers' bill to enjoin collection of taxes, which alleged their
      properties were overassessed when the defendant assessor and
      defendant city's board of review abdicated their statutory and
      charter imposed duties of appraisal and assessment by accept-
      ing, without exercise of independent judgment and without
      opportunity for hearing objections, the appraisals made by
      a private appraisal firm on a basis other than true cash value
      by unskilled appraisers, which appraisals were bought and paid
      for by mining companies whose properties benefited therefrom,
      alleged facts which, if proved, would constitute fraud, hence,
      merits the making of a testimonial record.

DETHMERS, C.J., and CARR and KELLY, JJ., dissenting.

Appeal from Gogebic; Brown (Ernest W.), J., pre-
siding. Submitted June 7, 1961. (Docket No. 17,
Calendar No. 49,085.) Decided December 1, 1961.

Bill by Peter O. Wyzlic and 14 other taxpayers
against the City of Ironwood, a municipal corpora-
tion, and various of its officials to declare assessment
void, to restrain collection of taxes, and to compel re-
assessment. Bill dismissed on motion. Plaintiffs
appeal. Reversed.

*Pellow & Pellow* (*William P. Pellow,* of counsel),
for plaintiffs.

*Eugene R. Zinn,* City Attorney, for defendants.

KELLY, J. (*dissenting*). Fifteen citizens, residents
and taxpayers of the city of Ironwood, Michigan,
filed their bill of complaint in equity (October 31,
1960) asking the circuit court for the county of Goge-
bic to declare void the assessments and levy of taxes
in the city of Ironwood for the year 1960 and to is-
sue an injunction restraining the collection of city,
county and school taxes and order a reassessment of
property in the city.

Plaintiffs' total property assessments represent approximately 7/10 of 1% of the total assessment of the city and the taxes involved are the city, county, and school taxes. The collection of county and school taxes commenced on December 1, 1960. Taxes for the city became due July 1, 1960. The city taxes, which were based upon the same assessment as the county and school taxes were levied,. have been paid by a majority of plaintiffs and other taxpayers.

Plaintiffs, asking a court of equity to exercise drastic relief, namely, to restrain the collection of city, county and school taxes and order a reassessment of property to the city, made the following allegations in the bill of complaint:

1. December 17, 1958, the board of supervisors passed a resolution declaring a lack of uniformity and equality in assessing taxable property within the county and petitioning the State tax commission to immediately conduct an appraisal and direct assessment as a basis for such appraisal;

2. February 9, 1959, the State tax commission answered the board's request, denying same and recommending that the board employ an independent appraisal company, with the understanding that. the commission's field staff would consult with the appraisers and, after completion of appraisal, would assume jurisdiction over the assessment rolls and hold hearings on reviewed appraisals;

3. March 19, 1959, the county, through its prosecuting attorney, wrote to the chairman of the Michigan State tax commission stating that while the commission "refuses to take jurisdiction in this matter unless an independent appraisal firm is employed" that a problem is presented because "the county does not have the funds to employ an independent appraisal firm";

4. Further, the prosecuting attorney wrote, on April 6, 1959, to the attorney general seeking advice,

explaining that the board of supervisors of Gogebic county was convinced that inequities in assessments, equalization, and taxation existed in the county; that the State tax commission had refused to assist until after an independent appraisal firm was employed by the board; and that the board did not have the money to hire an independent appraisal company;

5. That the attorney general answered* stating that pursuant to PA 1956, No 19 (CLS 1956, § 211.23a [Stat Ann 1960 Rev § 7.23(1)]), the board could employ an independent appraisal firm, that the creation of the State tax commission did not relieve local units of their duty of determining and collecting general property taxes and the legislature created the commission so that there would be a centralized agency with special knowledge to aid the work of various local assessors and that: "It is clear that the State tax commission may require the local assessing and equalizing authorities to exhaust all available means to arrive at proper assessments within their local unit";

6. That on May 20, 1959, a representative of the mining companies of Gogebic county appeared before the board of supervisors and offered $54,500 for the immediate employment of an independent appraisal firm, and on May 22d said representative of the mining companies wrote to the Gogebic county treasurer transmitting a check in the above amount, and stating that the offer was conditioned upon the appraisal firm working with local officials "and submission of the results of the appraisal thereby made to the jurisdiction of the State tax commission for the taxable year 1960, all as heretofore set out in correspondence with the Michigan State tax commission";

7. That on June 3, 1959, the secretary of the State tax commission wrote the administrative secretary

* OAG 1959–1960, No 3414, May 15, 1959.

of Gogebic county, advising that various mining companies were tendering an additional $35,000 to pay for the reappraisal of timberlands in Gogebic county;

8. That the board of supervisors employed E. T. Wilkins & Associates as the appraisal firm and:

"That the Wilkins firm has had numerous meetings with mining company officials regarding the assessment of real estate within the city of Ironwood, and that the Wilkins firm has also consulted with the State tax commission relative to the appraisal methods to be used within the city of Ironwood and therefore the State tax commission and the Wilkins firm substituted their judgment for that of the city commission of Ironwood, contrary to the charter and statutory law which requires that the city assessor and city board of review determine the value of all real and personal property within the city of Ironwood, and further, that the State tax commission acted as judge and jury."

9. Also,

"That the primary reason for the use of the Wilkins figures by the board of review of the city of Ironwood was to substantially shift the burden of taxation from the mining companies and the downtown business properties to the home owners, pensioners, businessmen, motel owners, and widows within the city of Ironwood, and plaintiffs allege that this constitutes a legal fraud upon their rights."

Our statutes provide relief for a taxpayer who considers himself illegally assessed, but, recognizing that while the rights of taxpayers must be guarded the practical operation of government must not be unduly frustrated or impeded, the same statute clearly states that no injunction shall issue to stay proceedings for the assessment or collection of taxes.*

While our Court has not always construed this as an absolute prohibition, we have held that only in

* See CL 1948, § 211.114 (Stat Ann 1960 Rev § 7.168).—REPORTER.

exceptional cases where denial of injunctive relief would result in irreparable injury would we grant injunctive relief.

We quote from *Sunday Lake Iron Co.* v. *City of Wakefield,* 323 Mich 497, 506:

" 'Since it is a matter of great importance in the administration of public affairs, * * * the levy or collection of taxes should not be restrained by injunction, at least other than in exceptional cases where denial of injunctive relief would result in irreparable injury. * * *

" 'Especially should the law as above stated be followed in this jurisdiction wherein by statute it is provided that an injunction shall not issue to stay proceedings for the assessment or collection of taxes. * * * Nothing appears in this record indicating that plaintiff would have suffered any unusual hardship if, as it had a right to do, it had paid the tax under protest and thereafter proceeded in an action at law to recover the amount paid if the protest made were meritorious.' "

In *Haggerty* v. *City of Dearborn,* 332 Mich 304, 319, we said:

"We hold that under CL 1948, § 211.53 [Stat Ann 1960 Rev § 7.97], a party dissatisfied with his assessment for taxes, either for real or personal property or special assessment on real property must pay under protest, specifying in writing the grounds of such protest. The statute also provides that after paying under protest the party must begin his action within 30 days after such payment. Plaintiff's failure to comply with statutory provisions precludes relief in the instant case. He had an adequate remedy at law, but failed to exercise his right thereto."

And, in *Dossin's Food Products, Inc.,* v. *State Tax Commission,* 360 Mich 312, 316, we stated:

"This Court has repeatedly refused to permit review of property tax matters by procedures not pro-

vided in the general property tax act. See *W. A. Sturgeon & Co.* v. *Board of Assessors of the City of Detroit,* 159 Mich 199, 202; *Sunday Lake Iron Co.* v. *City of Wakefield,* 323 Mich 497, 509; *Haggerty* v. *City of Dearborn,* 332 Mich 304, 319."

The opinion of the trial court dismissing the bill of complaint commented upon the statutory provision and referred to 2 of the above-mentioned decisions of our Court as follows:

"It is true that the last quoted statutory provision [CL 1948, § 211.114 (Stat Ann 1960 Rev § 7.168)] is not an absolute prohibition and injunctions may nevertheless be granted in cases of irreparable injury or unusual hardship. *Haggerty* v. *City of Dearborn,* 332 Mich 304. But in my opinion (as in *Haggerty*), plaintiffs have not alleged any irreparable injury or unusual hardship. They could have paid their taxes under protest and sued for recovery if they have a meritorious claim.

"This statutory provision was not 'repealed' or swept away by the majority opinion in *Spoon-Shacket Company, Inc.,* v. *County of Oakland,* 356 Mich 151, which overruled *Consumers Power Co.* v. *County of Muskegon,* 346 Mich 243. I am fully in accord with the majority opinion in *Spoon-Shacket,* but the instant case is not one where equitable relief should be granted 'from the unconscionable effect of crass mistakes of public officials in the field of taxation; mistakes gross enough to constitute fraud.' *Spoon-Shacket,* p 168.

"I do not mean to imply that none of the plaintiffs here have cause for complaint. I don't suppose there is a tax roll in the country where all the taxpayers are in accord with the judgment of the assessing officials. The remedy, however, is plain. It is not in equity where injunctive relief is sought. To hold otherwise would afford every aggrieved taxpayer who has the facility to utter such words of art as 'discriminatory' and 'fraudulent' an opportunity to com-

pletely disrupt our tax system and the orderly processes of raising public funds. In this connection the opinion of the trial court in *Sunday Lake Iron Co. v. City of Wakefield, supra,* as approved by the Supreme Court, is applicable to the instant case."

We agree with the trial court. Plaintiffs had an adequate remedy at law but failed to exercise their right thereto.

The decree should be affirmed. No costs, a public question being involved.

Dethmers, C. J., and Carr, J., concurred with Kelly, J.

Souris, J. We have here a bill of complaint which alleges that Gogebic county hired E. T. Wilkins & Associates, a private firm of property appraisers, to appraise real and personal property in the county; that mining companies in the area paid the cost of the appraisal, a total of $89,500; that the appraisals were completed by Wilkins after the local boards of review had met pursuant to statute[*] and charter provision to hear complaints about, and to review, assessments; that following such meetings of the board of review of the city of Ironwood, the board adopted the Wilkins' appraisal figures and reassessed all real and personal property in the city, except mining properties, at 44% of such figures; that no opportunity was provided by the Ironwood board of review to protest the assessors' and its actions in adopting the Wilkins' appraisals; that none of the other taxing units in the county adopted the Wilkins' appraisal for assessment purposes; that the Wilkins firm used unskilled workers and a method of valuation other than true cash value contrary to charter and statutory requirements that the city assessor and

---

[*] CLS 1956, § 211.29 (Stat Ann 1960 Rev § 7.29).

board of review appraise and assess property at true cash value; that Wilkins' original appraisal totaled $68,000,000, which was subsequently reduced by $32,-000,000 when an error was discovered and that another error of $11,000,000 was still later discovered; and that the result of the foregoing actions is an intentional overassessment of certain properties for the benefit of the mining companies and other business properties, thereby constituting a fraud, actual or constructive, upon the plaintiff property owners and others similarly situated.

The bill of complaint was dismissed on defendants' motion before answer. In his opinion granting defendants' motion, the chancellor stated, as his reasons for dismissal, that plaintiffs had an adequate remedy at law and, in any event, that they had failed to allege facts amounting to fraud over which equity could assert jurisdiction. Mr. Justice KELLY has written to affirm dismissal on the ground that plaintiffs' legal remedy was adequate in the absence of allegations that denial of injunctive relief would result in irreparable injury, citing and quoting from *Sunday Lake Iron Co.* v. *City of Wakefield,* 323 Mich 497, 506, and *Haggerty* v. *City of Dearborn,* 332 Mich 304, 319. In *Sunday Lake,* at pages 508 and 509, this Court concluded that the actions of the board of review there under attack were not fraudulent and that the city assessor had not deliberately and wilfully disregarded his duties in making assessments. The opinion of the Court cannot be read to mean that equity cannot take jurisdiction even where fraud is alleged unless "irreparable injury" would otherwise result. It can mean only that plaintiff in that case had an adequate remedy at law, its proofs having failed to establish fraud and an action at law entailing no "unusual hardship" upon plaintiff. The point is that equitable relief is always available to relieve against fraudulent actions if the pleadings properly

allege fraud. We have recently reiterated the long established rule that fraud is the special province of courts of equity. *Style* v. *Greenslade,* 364 Mich 679, and cases cited therein.

The opinion of this Court in *Sunday Lake* recognizes equity's jurisdiction in cases of this kind where taxes and assessments are attacked for fraud. We have recognized the power of equity in such cases on other occasions. *Albany & Boston Mining Co.* v. *Auditor General,* 37 Mich 391, 398; *Sloman-Polk Co.* v. *Detroit,* 261 Mich 689 (87 ALR 1294); *Twenty-Two Charlotte, Inc.,* v. *Detroit,* 294 Mich 275; *Helin* v. *Grosse Pointe Township,* 329 Mich 396, 407; *Kingsford Chemical Co.* v. *City of Kingsford,* 347 Mich 91, 98; *Spoon-Shacket Company, Inc.,* v. *County of Oakland,* 356 Mich 151; *Davidson* v. *City of Lansing,* 356 Mich 697; *Fluckey* v. *City of Plymouth,* 358 Mich 447; and *Knott* v. *City of Flint,* 363 Mich 483, 493.

We should recognize it in the suit at bar, the bill of complaint having alleged facts which, if proved, would constitute fraud. The clear purport of plaintiffs' allegations is that their properties were over-assessed when the defendant assessor and the defendant city's board of review abdicated their statutory and charter imposed duties of appraisal and assessment by accepting, without exercise of independent judgment and without opportunity for hearing objections, the appraisals made by a private appraisal firm on a basis other than true cash value by unskilled appraisers, which appraisals were bought and paid for by mining companies whose properties benefited therefrom. These allegations merit the making of a testimonial record.

Reversed. Cost to plaintiffs.

BLACK, EDWARDS, and KAVANAGH, JJ., concurred with SOURIS, J.

OTIS M. SMITH, J., took no part in the decision of this case.