KNOTT *v.* CITY OF FLINT.

HOYDIC *v.* SAME.

1. MUNICIPAL CORPORATIONS—TRUNK LINE HIGHWAY WIDENING—SPECIAL ASSESSMENTS.

Record in suits to enjoin defendant city from collecting special assessments for city's share of cost of projects for widening State and Federal trunk line highways within the city and imposed by the legislative body of the city upon abutting owners *held,* to support and justify findings of trial court that such improvements were for the benefit of the general public and were burdens to the abutting owners.

2. INJUNCTION—MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—TRUNK LINE HIGHWAY WIDENING.

Abutting owners whose property defendant city sought to specially assess for city's share of cost of projects for widening State and Federal trunk line highways within the city, that were not beneficial to such owners but actually detrimental thereto *held,* entitled to injunctive relief from imposition of such assessments.

3. SAME—MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—ADEQUACY OF REMEDY AT LAW.

Abutting owners of State and Federal trunk line highways upon whom defendant city sought to impose special assessments for city's share of cost of widening projects found to be detrimental instead of beneficial to such owners as a class were entitled to injunctive relief on ground of inadequacy of

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 48 Am Jur, Special or Local Assessments § 46.
Liability of abutting property to assessment for street paving as affected by character or extent of traffic. 73 ALR 1295.
[2–4] 48 Am Jur, Special or Local Assessments § 242.
Liability of abutting property to assessment for street paving as affected by character or extent of traffic. 73 ALR 1295.
[5] 14 Am Jur, Costs § 22.

remedy at law, where provision of general property tax law for payment under protest and action at law to recover does not appear to be applicable to recovery of special assessments imposed pursuant to municipal charter, the title of the statute contains no reference to special assessments, and the charter under which the assessments were imposed contains no provision for their payment under protest and recovery thereof at law (CL 1948, §§ 211.53, 211.114; Flint Charter).

4. SAME—MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—PAYMENT UNDER PROTEST—HARDSHIP.

Abutting owners of State and Federal trunk line highways upon whom defendant city sought to impose special assessments for city's share of cost of widening projects found to be detrimental instead of beneficial to such owners as a class were not precluded from seeking injunction because they might have paid the special assessments under protest and sued to recover, where such procedure was inapplicable to the particular circumstances, would have involved a large number of actions to recover assessments that were required to be collected in 2 annual instalments, and thereby would have worked a hardship on plaintiffs (CL 1948, §§ 211.53, 211.114; Flint Charter; Court Rule No 16 [1945]).

5. COSTS—CLASS SUITS—INJUNCTION—SPECIAL ASSESSMENTS—WIDENING OF TRUNK LINE HIGHWAYS—MUNICIPAL CORPORATIONS.

No costs are allowed in class suits to enjoin collection of special assessments imposed by city under its charter to defray its portion of cost of projects to widen State and Federal trunk line highways within the city, in view of the nature of the controversy (Court Rule No 16 [1945]).

Appeal from Genesee; Roth (Stephen J.), J. Submitted January 3, 1961. (Docket Nos. 12, 13, Calendar Nos. 48,181, 48,182.) Decided June 29, 1961.

Bill by Walter Knott against the City of Flint, a municipal corporation, and its city treasurer, to invalidate and vacate special assessment for widening of Davison road, and to enjoin collection thereof. Similar action by Carl Hoydic and Louise Hoydic in respect to widening of Dort highway. Cases designated as class suits and consolidated for hearing,

and appeal. Decrees for plaintiffs. Defendants appeal. Affirmed.

*Cline & George* and *John W. Thomas,* for plaintiffs.

*William J. Kane, Don W. Mayfield,* and *Wade D. Withey,* for defendants.

CARR, J. These cases were treated as class suits in circuit court, were tried together, and have been submitted in like manner on appeal. They are the result of projects undertaken in 1946 to widen Davison road and Dort highway in the city of Flint. Each of said thoroughfares is a trunk line, Davison being designated M–21 and also being a link in a Federal arterial highway system running east and west across the lower peninsula of Michigan. It was built originally at the sole expense of the State of Michigan. Dort highway is a part of US–10 and was, it appears, constructed in the first instance as a by-pass to said trunk line through the city. It does not appear that either said city or the abutting owners contributed directly to the cost of the original installation.

In the year mentioned agreements were made and plans adopted for the widening of said roads. The cost of each project was divided among the Federal government, the State of Michigan, and the city of Flint, the latter to pay 1/4 of the expense. The respective amounts allocated to defendant city were $33,504.87 for the widening of Davison road and $25,-703.38 for Dort highway. To cover its share of the cost of the projects the city determined to create special assessment districts along each thoroughfare, and to levy special assessments on the property fronting the respective roads. Apparently charter provisions were complied with in the procedure taken and special assessment rolls were prepared, the Davi-

son roll being designated as Special Assessment Roll No 701 and the cost of the Dort highway improvement being covered by Special Assessment Roll No 702. Properties of the plaintiffs in the present suits were assessed, but the payments so contemplated were not made. Suits were started in the circuit court of Genesee county to enjoin the collection of the assessments and to declare the municipal action invalid. Temporary injunctions were issued and remained in force and effect until 1955 when the suits were dismissed for lack of progress.

Following the dismissal of the suits originally instituted on behalf of those specially assessed the city indicated its intention of enforcing collection in accordance with the special rolls. The present suits were then brought by plaintiffs in April, 1956. Following certain interlocutory proceedings not material to any issue involved in either suit a hearing was had in circuit court. A number of exhibits were introduced in evidence for the purpose of showing the general situation insofar as set forth in official records, and also to place before the court certain details involving facts thought to be material. In part the showing thus made had reference to traffic conditions on the highways in question following the widening thereof. It was the claim of the plaintiffs as set forth in their pleadings that the improvements made by joint action of the Federal and State governments and the city of Flint were not beneficial to abutting properties but, on the contrary, were detrimental to the use thereof. It was further claimed that the projects were related to the general welfare and that accordingly the city's portion should have been met from municipal funds rather than by special assessments.

In support of their claims plaintiffs, following the introduction of their exhibits, stated to the court that they had witnesses available who would testify

that a number of the properties named in the assessment rolls were assessed at amounts greater than their valuation for tax purposes for the year 1946 according to the records in the city assessor's office; that the traffic, particularly the through traffic, on both Davison and Dort had increased greatly as a result of their widening; that ingress and egress to and from places of business were rendered difficult and in some instances impossible because of the traffic; that the properties along the highways could not be sold because of the situation that had developed; that a used-car lot was forced to discontinue its business because potential customers could not readily enter or leave the premises; that other places of business had similar difficulties; that certain properties assessed could not be sold for the amount of the special assessment thereon; and that an expert witness would testify, if examined as a witness, that the widening of the roads depreciated values generally along each thoroughfare, except as to specific properties having means of ingress and egress other than on Dort highway or Davison road. It was stipulated by counsel for defendants that the witnesses, if produced, would testify in accordance with the statement of plaintiffs' counsel.

In order to meet the suggested proofs available to plaintiffs, defendants, through their counsel, called attention to exhibits indicating an increase in the assessed valuations of properties on both thoroughfares in question during the period from 1946 to 1958, and stated that the city assessor would testify, if his oral testimony was desired, that a portion of such increase was due to the widening of the streets and the commercial advantages afforded by the facility for vehicular traffic. It was further stated that the city planner was prepared to testify that the property along Dort highway was zoned either as commercial or industrial, and that property on Davi-

son road was in part commercial. It was stipulated that the available witnesses mentioned would testify as indicated if they were called, and the controversy was submitted to the court on the basis of the pleadings, the exhibits, and the stipulated testimony of the witnesses that the respective parties to the cases offered to call.

The circuit judge sustained the claim of the plaintiffs that the city's portion of the cost of widening Davison road and Dort highway was not properly assessable to the owners of the abutting properties. The conclusion reached as to the merits of the controversy was summarized as follows in the opinion filed:

"It cannot be successfully maintained that this improvement was made for the convenience and benefit of the abutting owners; nor that the expense levied is in any reasonable ratio to the advantages accruing to the property in consequence of the improvement. The proofs in these cases, to the contrary, support the finding that the improvements were for the benefit of the general public, and resulted in actual burdens to the abutting owners. These improvements were necessitated by the tremendous increase in vehicular traffic, the growth in population in the city, county, and State, and for the accommodation of their inhabitants and the users of the 2 highways. The *ipse dixit* of the legislative body of the city of Flint will not suffice in law, any more than it does in fact. What any resident of the city of Flint knows, a court cannot and should not plead ignorance of. The common knowledge of the community is supported by the proofs, that the abutting owners here involved received minor, if any, benefits from the improvements, and suffered and will continue to suffer burdens and detriments far outweighing the former. It is not right, it is not fair, and, we must add, it is not lawful, to make the few foot the cost for what is a benefit to the many. To inflict upon

the abutting owners the added burden of paying for the widening of these 2 roads would, in the court's opinion, amount to unconstitutional confiscation of their property."

We are not prepared to say that the conclusion of the trial judge as to the factual situation presented on the record in these cases was not well-founded. Both of the highways involved in the widening proceedings were parts of the general trunk line system, and as such were designed to accommodate the traveling public. The improvements involved in the widening operations were presumably deemed necessary to prevent congestion, and incidentally to relieve traffic conditions on other thoroughfares of the city. The completion of the projects doubtless operated to the benefit of the people of the State and of the city at large. The proffered testimony on behalf of plaintiffs was such as to indicate that the abutting properties embraced within the assessment districts were not benefited. It seems apparent that a part of such properties, at least, sustained material detriments affecting their use, and consequently their value. It is quite possible, of course, that there were exceptions and that some parcels may have received benefits, but we are dealing here with the imposing of the city's portion of the cost of the improvements on all abutting parcels of real estate. The record before us supports and justifies the findings of the circuit judge, and the decrees entered in accordance therewith.

The situation here presented is analogous to that in *Fluckey* v. *City of Plymouth,* 358 Mich 447. Involved there was the validity of a special assessment of the cost of improving a certain highway by the construction of a reinforced concrete pavement 9 inches thick, and by widening the road in order to accommodate special traffic. As in the present case,

it was claimed by the plaintiffs that the project was not beneficial to their properties and was actually detrimental thereto. The trial court found the facts to be as claimed by the plaintiffs and rendered a decree accordingly, which this Court affirmed, recognizing that the situation presented justified the granting of equitable relief. The record in the instant cases supports a like conclusion.

Following the filing of the bills of complaint in these cases defendants submitted motions to dismiss, alleging in support thereof, among other grounds, that plaintiffs had an adequate remedy at law. Apparently no ruling was made by the trial court until the final decrees were entered in the cases. It was therein provided that the "motion to dismiss heretofore filed by the defendants is denied." On behalf of appellants it is argued that such ruling was erroneous.

Defendants' claim that plaintiffs were not entitled to seek the aid of equity because of the existence of an adequate remedy at law is predicated on the theory that they might have paid the assessments under protest and have brought suits to recover. It does not appear, nor is it claimed, that any provision of the charter of the city of Flint authorized such procedure in the case of disputed special assessments. Appellants, however, rely on section 53 of the general property tax law, as amended (CL 1948, § 211.53 [Stat Ann 1960 Rev § 7.97]). Said section in terms grants to a taxpayer the right to pay "any tax or special assessment, whether levied on personal or real property, under protest" and to thereafter, within 30 days and not afterwards, bring suit against the township to recover the amount paid. It is further provided that in cities where State and county taxes are collected by the county treasurer suits for the recovery of such taxes shall be brought only against the county. It will be noted

that the statutory provisions on which appellants rely do not in terms refer to special assessments levied in accordance with the provisions of municipal charters and subject thereto. Whether the legislature in the enactment of PA 1941, No 234, amending the cited section by including therein reference to "special assessments" had in mind solely such assessments levied under a statute of the State, of which the drain law may be cited as an example, is a matter to be considered in connection with the purpose and tenor of the general property tax law. It is significant that no specific mention was made of special assessments, on the basis of benefits received, under municipal charters. It may also be noted in passing that the title of the general property tax law contains no reference to special assessments.

In the instant case the assessments of which the plaintiffs have complained were made in accordance with the procedure outlined by the charter of the city of Flint, which charter provides for the payment of taxes under protest with the right to sue to recover the amount paid, but no such provision is made as to special assessments. Such being the situation the remedy was not available to plaintiffs in the instant case. *Reliance Automobile & Supply Co.* v. *City of Jackson,* 244 Mich 232.

In *Forest Hill Cemetery Co.* v. *City of Ann Arbor,* 303 Mich 56, this Court had occasion to construe a provision of the general property tax law of the State providing that:

"No injunction shall issue to stay proceedings for the assessment or collection of taxes under this act." (CL 1948, § 211.114 [Stat Ann 1960 Rev § 7.168].)

It was held that said provision did not apply to special assessments the legality of which was at issue in the case, and that plaintiff was entitled to

the equitable relief sought. Our attention is directed also to *Haggerty* v. *City of Dearborn*, 332 Mich 304, but in that case the charter of the defendant city contained a provision that special assessments should be incontestable unless suit to test the validity should be instituted within 30 days after the confirmation of the special assessment roll. The decision may not be considered as controlling in the instant controversy.

It is unnecessary to discuss at length the various provisions of the charter of the city of Flint relating to special assessments, the manner of collection thereof, and the rights and duties of the owners of property assessed. It is sufficient to say that no provision of the charter grants the remedy of paying under protest and bringing suit to recover the amount of such assessment; nor does it appear that the right of one claiming to be aggrieved because his property is burdened by an unauthorized or improper special assessment is precluded from seeking relief in a court of equity if the facts involved justify such action.

As above indicated, defendants contend that plaintiffs are precluded from invoking the aid of equity under the circumstances disclosed by the pleadings and the proofs in these cases on the theory that each might have paid his assessment under protest and have brought suit to recover. Obviously this would have involved a large number of actions, particularly in view of the fact that the assessments were required to be collected in 2 annual instalments. That such course of procedure, if available, would have worked a hardship on plaintiffs is obvious.

If the course of action suggested was available under applicable law it does not necessarily follow that equity was without jurisdiction. This Court has suggested in prior cases that notwithstanding the possibility of following a legal remedy equity

may take jurisdiction under circumstances imposing undue hardship. *Manufacturers National Bank of Detroit* v. *City of Detroit,* 285 Mich 273; *Sunday Lake Iron Company* v. *City of Wakefield,* 323 Mich 497. In the case of *Fluckey* v. *City of Plymouth, supra,* a special assessment was sought to be imposed on the owners of abutting properties to cover the cost of widening and improving a highway. As in the case at bar, it was determined that the properties of plaintiffs were not benefited but, rather, suffered detrimental effects. The decree of the trial court granting equitable relief was sustained by this Court on the ground that the factual situation presented indicated (p 454) "a fraud in law upon such property owners." If the plaintiffs in the *Plymouth Case* were entitled to the relief granted, then a like conclusion follows in the controversy now before us. If the plaintiffs here had an adequate remedy at law that they were bound to follow, a like situation existed in the case cited. However, equitable relief was there granted by unanimous decision of this Court.

As above noted, defendants base their claim that an adequate legal remedy was available to plaintiffs on certain language appearing in section 53 of the general property tax law of the State as amended by PA 1941, No 234 (CL 1948, § 211.53 [Stat Ann 1960 Rev § 7.97]). It is significant that prior to said amendment of 1941 no mention was made in the general property tax law of special assessments of any kind or character. In making the amendments now relied on the legislature did not specify whether reference was intended to such assessments levied under State law only, or to all assessments including those levied under provisions of municipal charters adopted pursuant to the home-rule act* of the State.

* PA 1909, No 279, as amended (CL 1948, § 117.1 *et seq.,* as amended [Stat Ann 1949 Rev and Stat Ann 1959 Cum Supp § 5.2071 *et seq.*]).—REPORTER.

Had the latter scope been intended it would seem that the legislature would have referred specifically to municipal charter proceedings in view of the intent expressed in section 107 of the general property tax law (CL 1948, § 211.107 [Stat Ann 1960 Rev § 7.161]) indicating that the act should not be applicable to cities and villages if inconsistent with their respective charters. It may be noted in this connection that the procedure set forth in the Flint charter with reference to special assessments is at variance with the statutory requirements as to taxation procedure under the general property tax law. As pointed out in the opinion of this Court in *School District of City of Pontiac* v. *City of Pontiac,* 262 Mich 338, 349 *et seq.,* the policy of the State of Michigan has been to recognize the fundamental purpose of the city home-rule act to vest control of local affairs in the electors of each home-rule city.

This brings us to the consideration of another question necessarily involved in the case. As above noted, appellants contend that the decree of the circuit court should be reversed on the ground that plaintiffs are precluded from invoking the aid of equity because of the existence of a legal remedy granted by the general property tax law. As indicated, we do not agree that the existence of a legal remedy, if such there was, barred recourse to equity under the factual situation disclosed by the record. In considering the impact of the statute as amended at the legislative session of 1941 the question arises whether the title of the general property tax law is sufficient to permit the inclusion in the act of provisions regulating the procedure to be followed by home-rule cities under their municipal charters in the levying of special assessments to cover the cost of public improvements, such assessments being necessarily based not on the value of the property but on the benefits to be received thereby.

Article 5, § 21, of the State Constitution (1908) declares that:

"No law shall embrace more than 1 object, which shall be expressed in its title."

The purpose of the constitutional provision has been repeatedly discussed in prior decisions of this Court, and the restriction thereby imposed is not open to question. As a general proposition the title of an act must be sufficiently broad so that one reading it may reasonably expect to find in the body of the act provisions of the character that the legislature has seen fit to insert, either in the original enactment or by amendment. It is significant that PA 1941, No 234, which amended section 53 of the statute, also amended the title. As so amended, the title read:

"An act to provide for the assessment of property and the levy and collection of taxes thereon, and for the collection of taxes heretofore and hereafter levied; making such taxes a lien on the lands taxed, establishing and continuing such lien, providing for the sale and conveyance of lands delinquent for taxes and for the inspection and disposition of lands bid off to the State and not redeemed or purchased; to define and limit the jurisdiction of the courts in proceedings in connection therewith; to limit the time within which actions may be brought; to provide penalties for the violation of this act; and to repeal all acts and parts of acts in anywise contravening any of the provisions of this act."

It will be noted that the language of the title as so amended, as did the original title, related solely to the taxation of property and the procedure to be followed with reference thereto. There is no suggestion that special assessments levied under municipal charters were provided for or in any way regulated. The legislative intent was further indicated

by the short title of the act as set forth in CL 1948,
§ 211.1a (Stat Ann 1960 Rev § 7.1[1]), which states
that:

"This act shall be known and may be cited as 'The
general property tax act.'"

Special assessments under charter provisions made
on the basis of benefits received are not prop-
erty taxes. The conclusion follows that if the refer-
ences to special assessments added by amendment to
section 53 of PA 1941, No 234, were intended to have
the application claimed by appellants in the instant
cases such amendments are not within the scope of
the title and are therefore void.

The Constitutional requirement above quoted has
been repeatedly considered in decisions of this Court.
In *People, ex rel. Stewart,* v. *Father Matthew So-
ciety,* 41 Mich 67, it appears that the legislature of
1865 passed an act entitled "An act to authorize the
formation of corporations for literary and scientific
purposes." Two years later the body of the act was
amended in such manner as to include "missionary
and other benevolent purposes." Justice CAMPBELL,.
writing the unanimous opinion of the Court in which
Justices COOLEY, GRAVES, and MARSTON concurred,
held that the amendment was not within the scope
of the title and hence, under the provision of the
Constitution of 1850 identical with that above quoted,
was invalid.

The above case was cited in *Vernor* v. *Secretary
of State,* 179 Mich 157 (Ann Cas 1915D, 128), in
which it was held that an amendment to the statute
there in question not covered by the title was void.
In reaching such conclusion the Court cited a num-
ber of prior decisions, including *Brooks* v. *Hydorn,*
76 Mich 273, 278, where it was said:

"This purpose of the constitutional direction,
which has been disregarded in this act, is that the

intent of the bill—its object—shall be clearly shown by its title, for the benefit, not only of the members of the legislature who are to vote upon it, but also for the benefit of the people of the State outside of the legislature, who are interested, and have a right to be, in all legislation, whether the same be general or special."

In *Rohan* v. *Detroit Racing Association,* 314 Mich 326 (166 ALR 1246), there was involved an act having for its object and purpose the regulation and licensing of horse racing and racing meets within this State. The title was so worded as to indicate such object. Incorporated in the measure was a provision authorizing the State department of agriculture to execute a lease of State lands subject to its control for the conducting of horse racing and other lawful purposes. It was held that the title of the act did not call attention or in any way express or indicate the granting of authority to make leases of the character in question, and that in consequence the provision was void. In reaching such conclusion the Court cited prior decisions of this Court and cases from other States. Further discussion of the purpose and application of the restrictive provision of article 5, § 21, of the State Constitution (1908) is not required.

The question before us is whether the title of the general property tax law of the State permits inclusion in the act under such title of regulations affecting special assessments, on the basis of benefits received, under home-rule municipal charters. That special assessments of the character here involved are not taxes in any sense of the term is scarcely open to question. It has been repeatedly held by this Court, and by other courts as well, that special assessments for local improvements on the basis of benefits received are not taxes, and that an exemption from taxation under a general law of the

State will not relieve from liability for municipal assessments of the character in question. The matter was discussed at some length in *Lake Shore & M. S. R. Co.* v. *City of Grand Rapids,* 102 Mich 374 (29 LRA 195). In rejecting the claim of the plaintiff that it was not liable for payment of an assessment levied for a local improvement, the Court quoted with approval (pp 381, 382) from 2 Dillon on Municipal Corporations (3d ed), § 778, as follows:

" 'Aside from the rule of strict construction which applies to exemptions from taxation, the cases cited in this and in the previous section will show that there is, in their ordinary use, a recognized *difference between the words "tax" and "assessment,"* and that the one does not always or usually include the other. Thus, a constitutional provision that "taxation shall be equal and uniform throughout the State" does not apply to local assessments upon private property to pay for local improvements. So a provision of the constitution of a State which requires "the rule of taxation to be uniform," in connection with another provision that "it shall be the duty of the legislature to provide for the organization of cities, and to restrict their power of taxation, *assessment,* et cetera, so as to prevent abuses in *assessments* and taxation," is construed not to apply to special *assessments* by municipal corporations, made by authority of the legislature, for local improvements,'—citing *Weeks* v. *City of Milwaukee,* 10 Wis 242."

In the case of *In re Petition of Auditor General,* 226 Mich 170, the question of exemption from liability for special assessment based on an exemption of the general tax law was at issue. It was held that the association whose property was involved and which was organized for benevolent and charitable purposes was exempt from a general village tax levied in connection with the construction of sewers,

but its liability was recognized for the payment of a special assessment of a portion of such cost raised pursuant to charter provisions in that manner. In discussing the case, it was said (pp 173, 174) :

"There is a clear distinction between what are termed general taxes and special assessments. The former are burdens imposed generally upon property owners for governmental purposes without regard to any special benefit which will inure to the taxpayer. The latter are sustained upon the theory that the value of the property in the special assessment district is enhanced by the improvement for which the assessment is made. A full discussion of the subject will be found in Cooley on Taxation (2d ed), p 650; 37 Cyc p 894; 26 RCL p 38; and in the following cases and those cited therein; *Lefevre* v. *Mayor of Detroit,* 2 Mich 586; *Sisters of Charity* v. *City of Detroit,* 9 Mich 94; *Lake Shore & M. S. R. Co.* v. *City of Grand Rapids,* 102 Mich 374 (29 LRA 195); *City of Big Rapids* v. *Board of Sup'rs of Mecosta County,* 99 Mich 351; *Newberry* v. *City of Detroit,* 164 Mich 410 (32 LRA NS 303); *Illinois Cent. R. Co.* v. *Decatur,* 147 US 190 (13 S Ct 293, 37 L ed 132); *Roosevelt Hospital* v. *Mayor of New York,* 84 NY 108; *German Lutheran Church Society* v. *City of Mt. Clemens,* 179 Mich 35."

A similar question arose in *Blake* v. *Metropolitan Chain Stores,* 247 Mich 73 (63 ALR 1386). There the parties to the cause had entered into a lease which required that the lessee should pay all taxes. The question arose as to its liability for a special assessment on the basis of a local improvement. In discussing the issue it was said (p 76) :

"A special assessment is laid on the property specially benefited by a local improvement in proportion to the benefit received for the purpose of defraying the cost of the improvement.

"The word 'taxes' presents to the mind exactions to defray the ordinary expenses of the government and the promotion of the general welfare of the country. It is not generally understood as applying to improvements, levied upon property with a resultant benefit thereto to the amount thereof. It must be assumed, as determined by the commissioner, that the value of plaintiffs' property was benefited by the improvement made to the amount of the assessment levied against it."

Said decision was cited with approval in *Graham v. City of Saginaw,* 317 Mich 427, where it was held that the limitation on taxation imposed by article 10, § 21, of the State Constitution (1908) did not apply to special assessments levied under the municipal charter. The cases cited and others of like import clearly indicate that special assessments on the basis of benefits received are not general property taxes.

In *Haggerty v. City of Dearborn,* 332 Mich 304, to which appellants have referred, it is apparent from a reading of the opinion and an examination of the record in the case that the question whether the amendments made at the legislative session of 1941 to section 53 of the general property tax law were within the scope of the title of the act was not directed to the attention of the Court. Had it been raised due consideration would have been given to it in lieu of the apparent assumption of validity. Be that as it may, the question is now before us for determination. It may be noted also that in the *Dearborn Case* the Court in its opinion referred to a provision of the municipal charter requiring the bringing of action within 30 days after confirmation of the assessment roll. Defendant city raised such question in its motion to dismiss, but apparently did not rely on the provisions of the general property tax law now in issue. Failure to comply with the

charter provision was obviously a bar to the action. We cannot agree that either the decision or the language in the opinion in the *Dearborn Case* may properly be regarded as controlling here. These cases now before us present legal issues, and equitable principles not there present. We must determine the pending matters in accordance with the actual situation presented, giving due regard to all questions involved.

The circuit judge properly denied the motions to dismiss and the facts presented by the proofs fully justified the granting of the equitable relief sought. The decrees entered are affirmed, but in view of the nature of the controversy no costs are allowed.

DETHMERS, C. J., and KELLY and KAVANAGH, JJ., concurred with CARR, J.

SOURIS, J. (*concurring*). I concur with Mr. Justice CARR in affirmance of the decrees below on the ground that the proofs supported the chancellor's ruling that the plaintiffs' properties were not benefited by the improvements for which they were specially assessed.

SMITH and EDWARDS, JJ., concurred with SOURIS, J.

BLACK, J. (*concurring*). "The fact that there is a legal remedy is not the criterion; that legal remedy, both in respect to its final relief and its modes of obtaining the relief, must be as efficient as the remedy which equity would confer under the same circumstances, or else the concurrent jurisdiction attaches." 1 Pomeroy's Equity Jurisprudence (5th ed), § 180, pp 254, 255.*

Whatever view or views we may divisively take of thoroughly worked-over section 53 of the general

* See application of this rule in *Powers* v. *Fisher,* 279 Mich 442, 447, and *Haylor* v. *Grigg-Hanna Lumber & Box Co.,* 287 Mich 127, 134.

property tax law (CL 1948, § 211.53 [Stat Ann 1960 Rev § 7.97]), I hold that the presence of an agreeably constituted and duly tried class action, conjoined with equity's canon that the very necessity of an undue multiplicity of suits in itself constitutes the inadequacy of the remedy at law which confers equitable jurisdiction,* results or should result in equity's triumph over defendants' motion to the jurisdiction.

This suit for injunctive relief involves more than 200 separately and specially assessed parcels of land, divided into 2 special assessment districts. It was inconvenient as well as impossible to directly bring in all interested parties, and so Court Rule No 16 (1945) was duly employed. All requisites of the practice were followed, including Mr. Honigman's suggestion (Honigman, Court Rules Annotated, 1959 pocket supplement, pp 27, 28) that the handing down of *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 US 306 (70 S Ct 652, 94 L ed 865), requires additional care in employment of the rule.

The interest of all special assessees was common. The situation was complicated, so far as adequacy of the asserted legal remedy might be concerned, by the fact that the assessments in question were levied in 1947; whereas these suits were not instituted until 1956 and were not brought to hearing until July of 1958. Title to many of the involved parcels had been transferred in the meantime, and so the directly represented parties agreed that the pivot question—validity of the city commission's resolution to

---

* "It is sometimes one of the very foundations of the concurrent jurisdiction,—an efficient cause of its existence. In fact, the 'multiplicity of suits' which is to be prevented *constitutes the very inadequacy of legal methods and remedies* which calls the concurrent jurisdiction into being under such circumstances, and authorizes it to adjudicate upon purely legal rights, and confer purely legal reliefs." 1 Pomeroy's Equity Jurisprudence (5th ed), § 243, p 462.

specially assess all such parcels—should proceed to judicial determination in a constituted class action.

The circuit court in chancery had jurisdiction to proceed, as against defendants' contention that all plaintiffs and all parties in interest had an adequate remedy at law, whether or not it be true that the owner of each specially assessed parcel had a right to pay each instalment of such assessment as it came due, and then sue for what he had paid on each occasion. How many hundreds of suits at law this would have entailed, had payment and suit been made and started within the limited time allotted by said section 53, need not be calculated. Obviously the number would add up to the equitably understood phrase, "a multiplicity of suits."

*Haggerty* v. *City of Dearborn,* 332 Mich 304, is not opposed to present support of equity's jurisdiction. One special levy on 1 parcel only was involved. There was but 1 plaintiff, and he was the complaining owner of such parcel. No question of multiplicity was involved and there was no occasion for employment of Court Rule No 16 (1945). The adequacy of the legal remedy in that case proves but well the inadequacy of the legal remedy in this class action.