EILENDER *v.* CITY OF PONTIAC.

1. HIGHWAYS AND STREETS—SPECIAL ASSESSMENT—EVIDENCE.
   Verdict for defendant city in property owners' action to recover special assessments, paid under protest, for part of city's share of State double 2-lane highway with 16-foot median *held,* supported by evidence showing that such construction conferred additional benefit upon the plaintiffs' property over and above that conferred upon the general public in the amount of at least the special assessment.

2. SAME—AUTHORITY OF CITY TO IMPOSE SPECIAL ASSESSMENT.
   Claim that city was not authorized by law . to impose special assessment upon plaintiffs' property abutting newly-constructed ·double 2-lane highway with 16-foot median *held,* without merit in property owners' action to recover special assessments for part of city's share of the expense of construction.

Appeal from Oakland; Dondero (Stanton G.), J. Submitted May 7, 1963. (Calendar No. 39, Docket No. 49,684.) Decided December 2, 1963.

Action by Charles Eilender and Esther Eilender against the City of Pontiac, a municipal corporation, to recover sums paid under protest on special assessment levied for widening of highway. Verdict and judgment for defendant. Plaintiffs appeal. Affirmed.

*Milton F. Cooney,* for plaintiffs.

*William A. Ewart,* City Attorney, for defendant.

KELLY, J. Plaintiffs owned a triangular piece of property, approximately 14 acres, within the city of

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 48 Am Jur, Special or Local Assessments § 38 *et seq.*

Pontiac, with a frontage of 1,334.26 feet on a 20-foot, 2-lane highway, known as M-24 and/or Perry street.

In 1958 the State constructed this 20-foot, 2-lane highway, into a double, 4-lane, divided highway, leaving plaintiffs with 1,190 feet of frontage, and the city of Pontiac's share of this $1,354,653 project was $220,548.21. The city withdrew $101,517.39 from its general fund and levied a special assessment against the abutting property owners for the balance of its share, namely $119,031.12.

Plaintiffs paid their assessment of $5,003.95 under protest and commenced this suit to recover same, alleging:

"The widening of the highway at or in the vicinity of plaintiffs' property, constituted a general public work.

"That the plaintiffs, said property owners, suffered a pecuniary loss by reason of the widening of the said Perry street and the construction of said double highway.

"That the value of plaintiffs' land was not increased in value in any amount by the widening of Perry street, a 2-lane highway to a 4-lane superhighway."

Trial was had before a jury and plaintiffs' 2 witnesses testified there were "no special benefits—as determined from general benefits" and "that there was no special benefit."

Plaintiffs' witness, John D. Millis, admitted that the new double, 2-lane highway, with a 16-foot center median, conferred general benefits to plaintiffs' property and would be an important feature to future use of the property, and that there would be probably a future potential economic factor due to the fact that more people can get in and out of plaintiffs' property with less hazards.

Defendant's witness, Mr. Archer, who is a land appraiser, testified that the construction of the 4-lane highway, with a safety factor, created "accessibility for ingress and egress" and doubled the value of the property. Another witness for defendant, a former director of highway planning and traffic engineering of the State highway department, testified that the construction of the double, 4-lane highway makes plaintiffs' property "much more attractive for commercial operation, or even residences, and a safer access to the property than they had before when they had the single."

At the close of testimony, the trial court submitted 2 questions for the jury's determination:

"1. Did the highway in this case as presently constructed confer additional benefit upon the property of the plaintiffs over and above that conferred upon the general public?

"2. Did the highway in this case as presently constructed increase the value of the plaintiffs' land in an amount at least equal to the sum paid by them as special assessment?"

The jury answered the foregoing questions in the affirmative, and plaintiffs appeal contending: (1) There was no competent evidence offered "that the reconstruction of a paved State highway, with a divided highway abutting appellants' property, produced a special benefit to appellants, over and above the general benefit enjoyed by the community as a whole," and (2) That the city of Pontiac was not "authorized by law to impose a special assessment upon appellants' property."

The record sustains the conclusion that the jury's verdict is well supported by the evidence, and this record is clearly distinguishable from appellants-cited *Fluckey* v. *City of Plymouth*, 358 Mich 447, where we agreed with the trial court's finding that

the widening of the thoroughfare was a detriment to adjoining property because of a high-class residential district, and *Knott* v. *City of Flint,* 363 Mich 483, where we agreed with the trial judge's finding that improvements were for the benefit of the general public and resulted in an actual burden to the abutting owners.

We see no merit to appellants' contention that the city of Pontiac was not authorized by law to impose this special assessment upon appellants' property.

Affirmed. Costs to appellee.

CARR, C. J., and DETHMERS, KAVANAGH, SOURIS, SMITH, and O'HARA, JJ., concurred with KELLY, J.

BLACK, J. (*concurring in affirmance*). During argument of this case interrogation from the bench established that no question had been raised as regards possible legal effect, upon Pontiac's special assessment of plaintiffs' property, of presumed statutory deduction, from the statutory award (see *State Highway Commissioner* v. *Eilender,* 362 Mich 697), of "the benefits accruing to [the plaintiff] owners of lands." For authority providing that such deduction should be made in given circumstances, see CL 1948, § 213.188 (Stat Ann 1958 Rev § 8.189). I allude to this in order that the question of such possible legal effect be not taken as having been decided, indirectly or otherwise, upon affirmance hereof. The allusion is deemedly in order because, as counsel advise, an appeal from the result of remand as ordered in the cited case has been taken and is now pending.

Had plaintiffs appealed to equity, for a decree declaring invalid these special assessments against their property, and had the seated chancellor found as in the *Fluckey Case* (*Fluckey* v. *City of Plymouth,*

358 Mich 447) that "the widening and paving project would diminish rather than enhance" the value of plaintiffs' said property, I would hold that the principles announced in *Fluckey* (also in *Knott* v. *City of Flint*, 363 Mich 483) control here and that plaintiffs should have full relief.

Plaintiffs however chose the concurrent and alternative remedy; that of suit authorized by statute to recover assessments paid under protest. The result was a finding, based on testimony the triers of fact had a right to believe as against opposing testimony, that the widening and paving project in question did "confer additional benefit upon the property of the plaintiffs over and above that conferred upon the general public."

The aforesaid finding must be accepted here, supported as it is by such testimony. On such ground I concur in affirmance.